## CONTINENTAL CASUALTY CO. v. UNITED STATES.

### No. 9496.

Circuit Court of Appeals, Fifth Circuit.

July 9, 1940.

Rehearing Denied Aug. 2, 1940.

Purnell M. Milner, of New Orleans, La., for appellant.

Rene A. Viosca, U. S. Atty., and J. Skelly Wright and Robert Weinstein, Asst. U. S. Attys., all of New Orleans, La., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a judgment against appellant, as statutory surety, for damages resulting from a breach of contract. The principal was adjudged a bankrupt, and his estate was insufficient to pay any part of this liability, although the referee recognized the government as a creditor of the estate for the amount claimed. The surety denied liability, on the ground that the government repudiated the contract, and also made a reconventional demand against the government for retained percentages and credits held by it, claiming subrogation thereto by virtue of having paid material and laborer's claims.

The evidence is largely documentary, and there is no serious dispute about the facts. On November 17, 1932, the United States entered into a contract with the Grasser Contracting Company for the construction of certain levees. Pursuant to the provisions of the Hurd Act, 40 U.S.C.A. § 270, the contractor, as principal, and appellant, as surety, executed a standard bond to guarantee the faithful performance of the contract. The specifications required various items of the work to be completed within stipulated terms, and the entire contract to be finished by September 25, 1933. The contract provided for the payment of liquidated damages in the sum of $20 per day, on each item of work, for every calendar day of inexcusable delay beyond the time fixed for the completion of the work.

The government made repeated efforts to expedite the work, but the contractor did not maintain his schedule, and the work was not completed in several items when, on March 16, 1934, he filed a voluntary petition in bankruptcy. On March 17, 1934, the contractor was officially placed in default and notified that his right to proceed with the work was terminated. The surety was promptly advised, and negotiations immediately ensued to determine whether or not the surety desired to complete the contract. The surety ultimately advised that it would complete the contract, provided that all legal steps were taken to have the Grasser contract definitely annulled or cancelled. Whether this contract was so cancelled is not clear.

On April 3, 1934, appellant's attorney asked the government's representative whether or not the surety, when completing the work, would receive progress payments as provided by the original contract. The representative replied that it would not. Appellant then wrote that this proposal constituted an entirely new contract, different from the one bonded, and advised that it would not complete the work under these terms and conditions. On April 28, 1934, the government advised the surety that a supplemental agreement might be made whereby these progress payments could be paid, and offered such an agreement. The surety declined to sign it, and refused to go on with the contract, claiming that it had been prejudiced by the delay. It was then notified by the government that bids would be opened on August 8, 1934, for the completion of the work, and that it would be held liable for any excess costs occasioned the government thereby, as provided by the surety bond. On the date set, a new contract was let, and the work was completed thereunder at an alleged excess cost to the government of $26,154.70. Thereupon, the government filed this suit to recover such excess from the surety, together with the sum of $620 as liquidated damages under the contract for the delay in the completion of the work beyond the contract date down to the date of the bankruptcy. The provision of the contract upon which the controversy centers is set out below.[1]

When the contractor defaulted in the performance of the contract by filing the petition in bankruptcy, the rights of the government and the liabilities of the surety under the contract immediately became fixed.[2] It is recognized that the surety is liable under the contract for the actual

[1] Article 9. Delays—Damages—If the contractor refuses or fails to prosecute the work, or any separable part thereof; with such diligence as will insure its completion within the time specified in Article 1, or any extension thereof, or fails to complete said work within such time, the Government may, by written notice to the contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event, the Government may take over the work and prosecute the same to completion by contract or otherwise, and the contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby. If the contractor's right to proceed is so terminated, the Government may take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor. If the Government does not terminate the right of the contractor to proceed, the contractor shall continue the work, in which event the actual damages for the delay will be impossible to determine and in lieu thereof the contractor shall pay to the Government as fixed, agreed, and liquidated damages for each calendar day of delay until the work is completed or accepted the amount as set forth in the specifications or accompanying papers and the contractor and his sureties shall be liable for the amount thereof; * * *

[2] United States v. United States Fidelity & Guaranty Co., 236 U.S. 512, 35 S. Ct. 298, 59 L.Ed. 696; Board of Education v. Maryland Casualty Company, 3 Cir., 27 F.2d 20.

damages sustained because of the breach, unless the government, by its failure immediately to consent to progress payments to the surety for the completion of the work after default, repudiated the contract. Was this action such repudiation? On this question, appellant occupies an unusual position. It predicated its agreement to take over and complete the work upon the condition that the contract be absolutely cancelled. If such cancellation was effected, there was no contract in existence for the government to repudiate. On the other hand, if the contract was not cancelled, but only the right of the contractor to proceed was terminated, it is apparent that there was no meeting of the minds on the surety's agreement to complete the work; hence it acquired no rights which could be violated. However this may be, appellant's contention must fail upon a more decisive ground.

 Conceding that a valid contract existed, upon the same terms and conditions as the original contract, between the surety and the government for the completion of the work, such contract was not breached or repudiated by the communication from the agent of the government which stated that no progress payments would be made. Public officers are merely the agents of the public, whose powers and authority are defined and limited by law. Any act without the scope of the authority so defined does not bind the principal, and all persons dealing with such agents are charged with knowledge of the extent of their authority.[3] That the agent in this case had no authority to perform the act relied upon to establish the breach is evidenced by the fact that the decision of the Comptroller General, which he cited and which controls such disbursements, held the contrary. 4 Comptroller General's Decisions, 611.

It is unnecessary to review the holding of the trial court that it was without jurisdiction to entertain appellant's reconventional demand, because the determination of the question of repudiation adversely to appellant's contention also disposes of this claim. The defense interposed to the demand of the government and the counterclaim both were founded upon the same predicate, and fail with it.

The record contains substantial evidence to support the finding of damages made by the trial court. The fact that the government permitted the contractor to continue the work after the period for completion had expired is no reason to deny it the damages expressly provided by the contract for such an occurrence. The government did more than it was required to do in its efforts to expedite the work, and the surety was fully advised of the progress of the work at all times. If it had any complaint on this score, it should have made it to the contractor responsible therefor at a time when it might have been of avail.

Affirmed.

---

[3] United States Bedding Company v. United States, 266 U.S. 491, 45 S.Ct. 182, 69 L.Ed. 399; Erie Coal & Coke Corp. v. United States, 266 U.S. 518, 45 S.Ct. 181, 69 L.Ed. 417; Hale County, Texas, v. American Indemnity Co., 5 Cir., 63 F.2d 275.