**UNITED STATES of America**
v.
**James O. McCUE, Sr., Defendant.**
**UNITED STATES of America**
v.
**James O. McCUE, Jr., Defendant.**
**Crim. Nos. 9799, 9798.**

United States District Court
D. Connecticut.
Nov. 10, 1959.

Harry W. Hultgren, Jr., U. S. Atty., District of Conn., Hartford, Conn., W. Paul Flynn, Asst. U. S. Atty., District of Conn., New Haven, Conn., Eldon F. Hawley, John Burke, Vincent P. Russo, Dept. of Justice, Washington, D. C., for the Government.

George F. Lowman, Cummings & Lockwood, Francis J. McNamara, Jr., Stamford, Conn., Charles W. Steadman, Cleveland, Ohio, for defendants.

ANDERSON, District Judge.

This is a motion to dismiss the separate indictments brought against each of the accused in these actions. Each defendant claims that the indictment against him should be dismissed because the offenses alleged were the subject matter of and included within the terms of a compromise agreement made on April 15, 1957 by defense counsel, on behalf of each of them, with the United States Attorney for the District of Connecticut and because the Government is estopped to prosecute on the charges in the indictments.

The indictment against McCue, Sr., is in three counts. The First Count alleges that in the course of an interrogation of him by special agents of the Internal Revenue Service on or about August 13, 1954, concerning his personal income tax liability for the years 1946 to 1952 and the corporation income tax liability of the Stamford Rolling Mills Co. for the years 1947 to 1951, that he, when asked about certain travel vouchers in connection with the business of the company, made a false statement when he said that he was in certain parts of the United States other than Stamford on particular dates.

The Second Count alleges that in the course of the same interrogation he made a false statement when he said that he had forbidden the Independent Oil Company to continue billing the Rolling Mill for fuel oil delivered to his own personal estate.

The Third Count alleges that during the same interrogation he made a false statement when he asserted that he had nothing to do with procuring the services of the Stephen B. Church Co. in drilling a well on his own personal estate.

The indictment against McCue, Jr., is in three counts. The First Count alleges that in the course of an interrogation of him by special agents of the Internal Revenue Service on or about August 31, 1954, concerning his personal income tax liability for the years 1946 to 1952 and the corporation income tax liability of the Stamford Rolling Mills Co. for the years 1947 to 1951, he, when asked about certain travel vouchers in connection with the business of the company, made a false statement in representing that he was in certain parts of the United States other than Stamford on particular dates.

The Second Count alleges that in the course of the same interrogation he made a false statement when he said that he had no knowledge that fuel oil delivered at his own home was charged to the company as a business expense and deduction.

The Third Count alleges that during the same interrogation he made a false statement when he declared that he knew nothing about who negotiated for the services of a well drilling company which drilled a well on his personal estate at the expense of the Stamford Rolling Mills Co.

Prior to the present indictments, McCue, Sr., had been indicted on March 13, 1957 in Criminal No. 9476 in two counts for willfully and knowingly attempting to evade and defeat his income taxes due for the calendar years 1950 and 1951, respectively, by filing false and fraudulent income tax returns for those years on March 15, 1951 and March 10, 1952. The offenses charged in that indictment against McCue, Sr., were alleged violations of Title 26 U.S.C. § 145(b).

McCue, Jr., had similarly been indicted on March 13, 1957 in Criminal No. 9477 in two counts of willfully and knowingly attempting to evade and defeat his income taxes due by filing false and fraudulent income tax returns for the calendar year 1950, by return of March 15, 1951,

and for the calendar year 1951, by his return of March 14, 1952.

Subsequent to the return of these 1957 indictments certain conferences were held between counsel for both of the McCues and Simon S. Cohen, Esquire, then U. S. Attorney for the District of Connecticut. Thereafter on April 15, 1957, after two chambers conferences with the court attended by defense counsel and the U. S. Attorney, McCue, Sr., pleaded nolo contendere to a lesser offense included in the indictment and was found guilty of a violation of § 145(a). D.C., 160 F.Supp. 595. He was fined $10,000 on each of the two counts and was sentenced to one year imprisonment on each count, sentences to run concurrently; the execution of the sentences was suspended and he was placed on probation for two years. The indictment in Case 9477 against McCue, Jr., was dismissed by the court on representation by the U. S. Attorney that the Government did not have evidence to convict McCue, Jr., as he was nothing more than the innocent agent of McCue, Sr.

Among the items, in the 1951 and 1952 Income Tax returns of both McCues, on which the charges were based in the indictments and in the lesser included offense, were failures to disclose income derived from charging to the corporation, in the years 1950 and 1951, the cost of wells drilled on their own respective properties for the use of their own residences; fuel oil delivered to and used in their respective personal residences; and payments for travel claimed to have been performed on the business of the corporation but never in fact performed. While the Internal Revenue agents were investigating the McCues' returns for the years 1946–1952, an investigator interviewed McCue, Sr., on August 13, 1954 and McCue, Jr., on August 31, 1954 and, to a number of questions about their 1951 and 1952 tax returns each gave answers which, in the present indictments, are alleged to be false. After the charges under the 1957 indictments had been disposed of, the present indictments, based upon the 1954

false statements, were procured as violations of Title 18 U.S.C. § 1001, a general statute which forbids the making of false statements or representations to any department or agency of the United States in any matter within its jurisdiction.

The defendants have moved for the dismissal of these indictments on the grounds: (1) that the offenses charged in them were a part of and included within a compromise agreement, authorized by Title 26 U.S.C. § 7122(a), and made on April 15, 1957 just prior to the plea and disposition in McCue, Sr.'s case under the 1957 indictment; and (2) that the Government is estopped from prosecuting the present indictments because McCue, Sr., submitted himself to punishment and paid his penalties in reliance upon the District Attorney's promise that McCue, Sr.'s plea to the lesser included offenses on April 15, 1957 was in full disposition and satisfaction of any and all criminal offenses which might derive from any material in the investigative file of those cases based on acts of McCue, Sr., or McCue, Jr., or both.

The Government says in reply: (1) that no such compromise was made; (2) that the United States District Attorney was not a "delegate" of the Attorney General and had no authority to make any such compromise; (3) that Title 18 U.S.C. § 1001 is not "an internal revenue law" within the provisions of Title 26 U.S.C. § 7122(a); and (4) that the Government is not and cannot be estopped from prosecuting on the present indictments.

■ Taking up first, the question of whether or not the present indictments are barred by a compromise agreement under § 7122(a) between the defendants and the Government, it is apparent that there is conflicting evidence both as to the making of any compromise agreement on April 15, 1957 and, if it in fact had been made, what its terms were. These are matters which, absent the formal waiver required by the rules, would have to be determined by a jury. Rau v. United States, 2 Cir., 260 F. 131. Therefore, for the purpose of this motion to

dismiss, the court must assume the facts to be what the defendants say they are. The defendants claim that on April 15, 1957 they and the then U. S. Attorney for the District of Connecticut, under the authority of Title 26 U.S.C. § 7122(a), entered into a compromise agreement which generally provided that in return for pleas of nolo contendere by McCue, Sr., to two counts of Title 26 U.S.C. § 145 (a) misdemeanor charges, the 1957 tax evasion indictments against both McCue, Sr. and Jr. would be dismissed and that McCue, Sr. and Jr. would, except for the misdemeanor charges against McCue, Sr., be granted immunity from prosecution on all possible criminal offenses disclosed in the investigative file then in the possession of the U. S. Attorney.

The interpretation placed upon these facts by the defendants and what was intended to be accomplished by the claimed agreement are reflected in their memorandum filed April 2, 1959 in support of this motion to dismiss the indictments where, on page 16, the defendants say:

"Relying upon the government's promise that he would thereby be able to settle his and his son's criminal liability arising out of the tax investigation, the defendant, James O. McCue, Sr., pleaded *nolo contendere* to a crime."

and in their supplemental memorandum filed April 14, 1959, page 4, where they refer to the agreement as follows:

"* * * the dismissal of the charges against him, [McCue, Jr.] was a part of the compromise agreement between the government and the defendants. One of the government's contractual obligations under the agreement was to consent to the dismissal of the charges against Mr. McCue, Jr. Underlying this bargain, of course, was the government's substantial doubt as to its likelihood of obtaining a conviction of Mr. McCue, Jr. But the dismissal was a direct result of the compromise, not of the doubt alone. The government made no indication that it would consent to the dismissal of the charges against Mr. McCue, Jr., until Mr. McCue, Sr., agreed to plead *nolo contendere*. The compromise covered both McCues and it protects both from further prosecution for the same alleged criminal acts."

■■ Had a valid compromise agreement been entered into under § 7122(a), it would have bound the parties, and the court would have been obliged to give it full recognition and force, save for the matter of penalty which cannot be made a part of such an agreement. United States v. Sabourin, 2 Cir., 1946, 157 F.2d 820. But the so-called compromise agreement as claimed by the defendants is invalid on its face. First, it should be made clear that McCue, Sr., was arraigned, found guilty, fined and sentenced on the same day and only a matter of two or three hours after the claimed compromise agreement was made. Yet at that time, neither in the court proceedings nor in the chambers conferences with defense counsel and the U. S. Attorney immediately preceding the court session, was any mention made of a compromise—much less a compromise under § 7122(a) of Title 26 U.S.C.

■ As represented to the court at the time of the chambers conferences and the court session which immediately followed, the posture of the cases was that there had been negotiations between the U. S. Attorney and defense counsel for disposition of McCue, Sr.'s case on the basis of certain provable guilt on his part, which the U. S. Attorney represented as calling for a § 145(a) misdemeanor charge. The U. S. Attorney then stated that McCue, Jr., had done nothing more than act as the innocent agent of McCue, Sr., that there was no evidence available of willful wrong-doing on the part of McCue, Jr., and that the indictment against him should be dismissed. As then presented to the court, the dealings between defense counsel and the U. S. Attorney were solely in the nature of what is sometimes referred to as "plea bargaining", something to which the

court is in no sense required to give effect; and the conferences which followed with the Court were for the sole purposes of determining whether the court would hear and dispose of the cases that same afternoon and, a dismissal of indictment being involved, whether the court, upon the representations made by counsel, would approve of the disposition of the cases in that manner without, of course, there being any discussion of what penalties might be imposed upon McCue, Sr. The defendants now claim that at the time of the making of the compromise agreement entered into a few hours earlier and undisclosed to the court, the U. S. Attorney, though somewhat doubtful that he could secure a conviction of McCue, Jr., did not concede McCue, Jr.'s innocence but agreed to accept the submission by McCue, Sr. to punishment as full consideration for any guilt of McCue, Jr., as well as that of McCue, Sr. Had the terms of the claimed compromise agreement been fully disclosed to the court on April 15, 1957, the court could not have approved of it because an agreement by the terms of which, one person assumes punishment for the guilt of himself and another is improper and void. United States v. Doe, D.C., 101 F.Supp. 609.

Therefore, although McCue, Sr., having submitted himself to punishment under the 1957 tax evasion indictment could obviously not again be prosecuted for the charges contained in that indictment, the claimed agreement cannot avail to bar the present indictment.

■ The Government asserts that the U. S. Attorney had no inherent, express, implied or apparent authority to enter into a compromise agreement with the defendants under § 7122(a) of Title 26 U.S.C. because he was not the "delegate" of the Attorney General for this purpose.

¶ 12 of § 7701(a) of Title 26 U.S.C. provides:

"(12) Delegate.—The term 'Secretary or his delegate' means the Secretary of the Treasury, or any officer, employee, or agency of the Treasury Department duly authorized by the Secretary (directly, or indirectly by one or more redelegations of authority) to perform the function mentioned or described in the context, and the term 'or his delegate' when used in connection with any other official of the United States shall be similarly construed."

The pertinent portion of § 5 of Executive Order No. 6166 is as follows:

"The functions of prosecuting in the courts of the United States claims and demands by, and offenses against, the Government of the United States, and of defending claims and demands against the Government, and of supervising the work of United States attorneys, marshals, and clerks in connection therewith, now exercised by any agency or officer, are transferred to the Department of Justice.

"As to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the Department of Justice." 5 U.S.C.A. § 132 note.

It is, therefore, clear that to compromise such a case the U. S. District Attorney must have actual authority from the Attorney General. This plain requirement of an actual delegation of authority negatives the idea that the U. S. District Attorney has the authority simply by virtue of his office. United States v. Beebe, 180 U.S. 343, 351, 21 S.Ct. 371, 45 L.Ed. 563, holds that there is no such inherent authority in the office of U. S. District Attorney. It is uncontradicted that the U. S. Attorney had no express authority; and there is no evidence at all that he had implied authority, for that would require a showing that the Attorney General intended that he have the authority and that the surrounding circumstances made that intention and

the grant of power necessary and manifest. 2 C.J.S. Agency § 99.

"Public officers have only such power and authority as are clearly conferred by law or necessarily implied from the powers granted * * *." [See Federal Trade Commission v. Raladam Co., 283 U.S. 643, 51 S.Ct. 587, 75 L.Ed. 1324; and Brown v. U. S., D.C., 102 F. Supp. 132] 67 C.J.S. Officers § 102.

█ Further consideration of the proper construction of the compromise statute shows that it is unavailable to the defendants as a recourse in these cases, for § 7122(a) is not intended to provide for settlement of criminal cases alone, unrelated to civil liability. The cases, i. e. those based upon the 1957 tax evasion indictments, discussed by the United States Attorney with defense counsel on April 15, 1957 were entirely criminal cases; there was no civil aspect or settlement involved, nor at that time had any disposition been made of the civil claims arising out of the errors found in the 1951 and 1952 Income Tax Returns on which the indictments were based. Although the statute (§ 7122) empowers the Attorney General or his delegate to compromise any civil *or* criminal case arising under the internal revenue laws after it has been turned over to the Department of Justice, reference has not been made nor has research disclosed any case where, as in the present instance, the criminal phase alone was involved. The decided cases have all, directly or indirectly been concerned in whole or in part with the settlement of civil claims as well.

█ There is no logic or reason for authorizing the compromise of a criminal case under the Internal Revenue laws, which would not apply with equal force to all other statutes in the criminal code, except for the distinguishing feature of the criminal laws under the Internal Revenue laws, which is that they are coupled with a civil liability for the payment of money. They are a part of a section of the federal statutes, the one increasing purpose of which is the protection and collection of revenue. The "agreement" for compromise presupposes some special consideration moving to the Government, other than that which is in every non-Internal Revenue criminal case, and that consideration is only supplied by the civil aspect of the case. The purpose of the statute was to facilitate the money settlement of tax liabilities. The use of the disjunctive in the phrase to "compromise any civil *or* criminal case" was intended to take care of circumstances where criminal charges have been brought or a criminal prosecution has actually been commenced but no formal action has been taken with regard to the civil liabilities and an agreement has been reached covering both the civil and criminal aspects. It is significant that this statute and its predecessors go back for more than 91 years and in that long period of time no case appears to have arisen where an attempt was made to agree on a compromise of a criminal case standing alone and unrelated to any disposition of civil liabilities.

The same words "compromise any civil or criminal case" are used in the statute in giving authority to the Secretary of the Treasury, and the statute requires him, whenever such a compromise is made "in *any* case" to record the tax assessed, additional charges made and "the amount actually paid in accordance with the terms of the compromise". The inference to be drawn from this is that the purpose of the compromise statute was to facilitate money settlements of tax liability and the settlement of criminal charges are contemplated only when they are ancillary thereto.

█ Moreover, although the same formal record is not required of the Attorney General or his delegate, it is hardly to be supposed that Congress intended that compromise agreements on behalf of the Government could be entered into by the U. S. District Attorney in an unrecorded informal oral conversation. In all of the cases in which this compromise statute has been invoked there has been a written agreement entered into by the Attorney General or his delegate or, ab-

sent such writing, there has been a formal record of money paid in satisfaction of tax liability. United States v. Wainer, 7 Cir., 1957, 240 F.2d 595; United States v. Sabourin, 2 Cir., 1946, 157 F.2d 820; Burr v. U. S., 7 Cir., 1936, 86 F.2d 502; Oliver v. U. S., 4 Cir., 1920, 267 F. 544; and Willingham v. United States, 5 Cir., 1913, 208 F. 137.

■ The defendants also invoke the principle of estoppel as a bar to the 1959 indictments. It is their contention that the Government through the United States District Attorney entered into an agreement with the defendants, in reliance upon which McCue, Sr., submitted himself to punishment and paid the penalty, and that, therefore, the Government whether or not the compromise statute applies and whether or not the U. S. Attorney had actual authority, is now estopped to prosecute the defendants on charges which were within the scope of the plenary immunity granted by the agreement. The claim of estoppel is in effect the same as a claim of apparent authority. That is to say, the defendants assert that the Government left it to the U. S. Attorney to deal with these cases; he had the investigative file and he talked with defense counsel about them; that these things gave the defendants reasonable grounds to believe that the U. S. Attorney had full power in the premises, that they relied upon his having that power and in consequence McCue, Sr., subjected himself to the penalties which he suffered.

There is a substantial body of authority which holds that where actual authority in a governmental officer is called for, its absence will prevent the arising of an estoppel. Under this line of precedent, as there was no evidence in the present case of actual authority to compromise, the Government could not be estopped by any acts of the United States Attorney which were beyond the scope of his authority. McDonald v. U. S., 8 Cir., 1937, 89 F.2d 128; Buie v. U. S., 5 Cir., 1935, 76 F.2d 848.

" * * * All persons dealing with public officers must inform themselves as to their authority, [See United States v. Foster, 8 Cir., 131 F.2d 3, certiorari denied 318 U.S. 767, 63 S.Ct. 760, 87 L.Ed. 1138], and are bound, at their peril, to ascertain and know the extent and limits of their authority. [See United States v. Jones, 9 Cir., 176 F.2d 278; Continental Casualty Co. v. U. S., 113 F.2d 284, certiorari denied, 311 U.S. 696, 61 S.Ct. 133, 85 L.Ed. 451; Northern Pac. Ry. Co. v. U. S., D.C., 70 F.Supp. 836, affirmed 8 Cir., 188 F.2d 277]; and acts which are within the apparent, but in excess of the actual, authority of officers will not bind the government which they represent * * * " [See Foster, supra; United States v. Buescher, 8 Cir., 131 F.2d 3, certiorari denied, 318 U.S. 767, 63 S.Ct. 760, 87 L.Ed. 1138 and cases cited supra.] 67 C.J.S. Officers § 102, pp. 366, 367.

Even if this statement of the law is regarded as too broad, there are several considerations which militate against a conclusion of estoppel in this case:

■ First, assuming that the negotiations with the U. S. Attorney were as the defendants claimed they understood them to be, the policy reason which rendered the so-called compromise agreement itself ineffective as a bar to the 1959 indictments would also prevent the arising of an estoppel, for an estoppel cannot stem from reliance upon an agreement which is illegal and void.

■ Second, although the question of the existence of a compromise agreement under § 7122(a), as a bar of the 1959 indictments, in itself, requires a determination of the facts by a jury, the facts connected with the claimed making of the compromise agreement on the equitable issue of estoppel rest with the court. The court's own finding is that, in fact, no compromise agreement under § 7122(a) was at any time entered into between the Government and the defendants in connection with the 1957 tax evasion indictments or any other charges or possible charges against them.

The negotiations and discussions between the U. S. District Attorney and defense counsel in 1957 amounted to nothing more than so-called "plea bargaining".

Third, there is the matter of constructive notice derived from the compromise statute itself.

 An element of estoppel is that there has been a reasonable reliance by the party claiming it, upon some representation by the other party. Here the defendants were on notice from Title 26 U.S.C. § 7122(a) and Title 26 U.S.C. § 7701(a), ¶ 12, and Executive Order 6166 that actual authority delegated by the Attorney General to the U. S. District Attorney was required. They alone are notice that actual authority must be specifically delegated; and, at the very least, put the defendants upon inquiry.

There is also notice from the wording of the statute itself. § 7122(a) says "the Attorney General or his delegate may compromise any such case".

 The compromise statute must be narrowly construed for it is in derogation of the general rule that the interests of the sovereign in the enforcement of its criminal code is not something to be contracted or bargained away and is not a proper subject of compromise. It can only be done where in a particular area some public interest justifies it and then it can only be done by special stautory authority. Buie v. U. S., supra. Therefore the word "case" as used in Title 26 § 7122(a) must be given a construction which keeps it within the narrow walls of the purpose of the statute, which is to settle a particular formulated charge, before or after indictment.

 Assuming arguendo, that the defendants and the U. S. District Attorney attempted to enter into a compromise agreement under § 7122(a), surely the word "case" can refer only to charges, formulated in the Attorney General's office, which the U. S. Attorney had been directed by the Attorney General to prosecute. The only "cases" then in his

hands for this purpose were the 1957 tax evasion indictments. But the compromise agreement claimed here by the defendants goes far beyond a compromise of the 1957 indictments. The defendants claim that the U. S. Attorney granted to them a plenary immunity from prosecution of all possible offenses (of which the U. S. Attorney said there were many) disclosed in the investigative file which was then in his possession. Possible offenses which have been mentioned·in the records of these cases are conspiracy, obstructing justice and false statements to an agency of the United States. The defendants have left no doubt about the scope of the agreement:

> "The compromise was understood by the attorneys for the defendants and the U. S. Attorney as encompassing all criminal matters then known to the Government arising out of the tax investigation." Defendants' memorandum filed April 2, 1959, page 2.

> " * * * Mr. Cohen's intention at the time of the negotiations preceding the disposition of the earlier indictments was to settle all criminal matters arising from the investigative file then before him." Defendants' 2nd supplemental memorandum filed September 23, 1959, page 13.

> " * * * The Government emphasizes the fact that no false statement charges were instituted or suggested in connection with the § 145(b) criminal proceedings against the McCues. It is not clear what importance the Government seeks to attach to this proposed finding of fact. Perhaps it wishes to counter, thereby, any argument by the defense that there was an express compromise of criminal charges involving false statements. If so, we want to make it clear that we are not asserting that there was an agreement in *haec verba* that 'criminal charges under 18 U.S.C. § 1001 based on false statements made in 1954 are hereby compromised.'

Rather, our contention is that we compromised, generally, all possible criminal offenses disclosed in the McCue file in the possession of United States Attorney Cohen * * * " Defendants' memorandum filed October 3, 1959, pp. 3, 4.

Even if the statutes and Executive Order were construed not to require actual authority and power were held to be inherent in the office of the United States Attorney to compromise, without express authority from the Attorney General, pending charges which the Attorney General has ordered him specifically to proceed upon, such as the tax evasion charges of 1957, the "cases" then in his hands, still they were on notice that he had no authority to grant a complete immunity from prosecution for any criminal acts mentioned or suggested in the investigative file. The Whiskey Cases, 99 U.S. 594, 25 L.Ed. 399; Wilber Nat'l Bank v. U. S., 1935, 294 U.S. 120, 55 S.Ct. 362, 79 L.Ed. 798; United States v. Shotwell, 7 Cir., 1955, 225 F.2d 394; Sanders v. C. I. R., 10 Cir., 1955, 225 F.2d 629, certiorari denied 1956, 350 U.S. 967, 76 S.Ct. 435, 100 L.Ed. 839; and McDonald v. U. S., 8 Cir., 1937, 89 F.2d 128, 138.

█ Moreover, the defendants are themselves barred from raising the issue of an estoppel based upon the claimed agreement because the carrying out of the agreement involved the dismissal of two indictments which necessitated action by the court. Under these circumstances the court is entitled to a full and complete disclosure of all of the circumstances surrounding the motion for dismissal. It is apparent from the face of the record and the defendants' claims that there was not disclosed to the court at the time the motion was made to dismiss the indictments, two features of the agreement which would have vital consequences: first, that McCue, Sr. had agreed to submit himself to punishment, both for himself and for McCue, Jr.; and, second, that the U. S. Attorney had agreed to grant plenary immunity from prosecution on any and all charges which

might be derived from the investigative file. United States v. Doe, supra.

In view of the foregoing it is unnecessary for the court to discuss the point urged by the Government that Title 18 U.S.C. § 1001 is not "an Internal Revenue Law" within the provision of the compromise statute.

█ If, however, on April 15, 1957 a legal and valid compromise agreement relating to the 1957 tax evasion indictments and any charges which might be based upon the 1954 false statements had been entered into in connection with a civil settlement and the U. S. Attorney had been appointed the delegate of the Attorney General for the purpose, it may be said by way of dictum that such an agreement would probably bar the 1959 indictments based upon the 1954 false statement charges, because at the time of the claimed agreement the Government had a choice of charging the defendants for the 1954 false statements either under § 1001 or § 145(b). The mere fact that the Department of Justice in 1959 decided to call it a § 1001 violation and thus not an Internal Revenue offense would not relate back to make it a non-Internal Revenue violation. The defendants would be entitled to a conclusive presumption that at the time of the compromise agreement the charges being then unlabeled as either § 1001 or § 145(b), it was the latter and not the former. As the elements required to be proven for § 1001 and § 145(b) would, under the circumstances, be identical, the disposition of the case under § 145(b) would bar a future § 1001 prosecution as double jeopardy.

█ The defendants protest that if, after making an agreement for the disposition of a criminal charge under the Internal Revenue laws, the Government can the next day commence prosecution against the same defendants for another charge arising out of the same course of investigation, no defendant would enter into an agreement under § 7122(a) and the statute would as a practical matter be rendered completely nugatory. The answer to this is that if a proper com-

promise agreement is entered into with a properly authorized officer of the Government and there is some evidence, informal as it may be or inferred as it may be from aspects of the civil settlement, that the particular violation of the Internal Revenue laws has been included, then the compromise statute will operate as a bar to a prosecution for that violation.

The motions to dismiss are denied.