UNITED STATES of America, Plaintiff,

v.

THWAITES PLACE ASSOCIATES, et al., Defendants.

No. 81 Civ. 5867 (RWS).

United States District Court,
S. D. New York.

Sept. 23, 1982.

---

John S. Martin, U. S. Atty., S.D.N.Y., New York City, for plaintiff; Michael Patrick, Asst. U. S. Atty., New York City, of counsel.

Paul L. Beck, New York City, for movants.

## OPINION

SWEET, District Judge.

This matter is before the court on a motion for an order to compel the United States Marshal for the Southern District of New York to accept the bid of movants made at a foreclosure sale. Movants John Dedvukaj ("Dedvukaj") and Harvey Sorkin ("Sorkin") contend that Dedvukaj's tender of certain checks to Deputy United States Marshal Peter-Paul Mihailoff ("Mihailoff") was in accordance with custom and the Terms of Sale governing the foreclosure sale and that therefore Mihailoff wrongly refused to accept said checks. For the reasons set forth below the motion is denied.

On December 22, 1982 this court entered a default judgment against Thwaites Place Associates in the underlying mortgage foreclosure action and directed that the subject property be sold at a public auction "in accordance with the rules and practices of this Court and provisions of 28 U.S.C. §§ 2001 and 2002, under the direction of the United States Marshal for the Southern District of New York, or his representative" (81 Civ. 5867). Pursuant to that order and judgment a sale was scheduled on proper notice for June 4, 1982. On that day, Mihailoff appeared at the New York State Supreme Court Building in the Bronx to conduct the sale.

Prior to opening the floor for bids, Mihailoff read out loud the entire Terms of Sale. The first paragraph reads as follows:

Ten percent (10%) of the purchase money of said premises will be required to be paid in cash or certified check to the said Marshal at the time and place of sale, and for which the Marshal's receipt will be given.

In addition, he followed his normal and customary practice of informing those present that any payments made by certified check would be accepted only if they were payable to the U.S. Treasury or the U.S. Marshal.

Bidding began. The highest bid was made by one Mr. Binder ("Binder") and the next highest by Dedvukaj. Binder, however, had only a personal check to cover ten percent of his bid. Arguments among the bidders ensued regarding the requirements of purchase and the manner in which the sale was being conducted. Mihailoff reiterated that the terms of sale specifically require payment "in cash or certified check" and only those checks made out to the U.S. Marshal or U.S. Treasury would be accepted. In light of the difficulties encountered up to that point Mihailoff announced that he would restart the bidding, having again made clear the requirements of the Terms of Sale. Binder left his wife at the sale and went off to the bank to get a certified check.

When bidding began again, the upset price of $650,000 was bid by the United States. Dedvukaj then bid the high bid of $651,000 and produced one bank check in the amount of $65,000 and another in the amount of $5,000, both made out to "Harvey Sorkin," one of the other bidders at the sale. Mihailoff advised Dedvukaj that the third party checks were unacceptable under the Terms of Sale and that acceptance of a doubly indorsed check was contrary to established policy and practice of the U.S. Marshal's Service and to the Terms of Sale. To confirm this, Mihailoff telephoned Shirley Paccione ("Paccione"), Supervisory Staff Assistant in the Administrative Section of the U.S. Marshal's Service, Southern District of New York, who informed him that the Marshal's Office was unable to

accept third party bank checks and that the checks had to be addressed to the U.S. Marshal or the U.S. Treasury. Mihailoff related the contents of his conversation with Paccione to Dedvukaj. Dedvukaj protested claiming that indorsement of the bank checks to the Marshal satisfied the Terms.[1] Mihailoff then cancelled the sale to be rescheduled for a later date.

Dedvukaj and Sorkin in their affidavits and memorandum of law state in conclusory terms that it is customary for the U.S. Marshal to accept bank checks payable to some third party payee and indorsed over by that payee to the Marshal. In his affidavit, George V. Grant ("Grant"), United States Marshal for the Southern District of New York, states in paragraphs three and four:

3. To account properly for all monies collected by my office, I have since my appointment in September 1977, maintained a strict policy of accepting payment only in the form of cash or certified checks drawn on a New York bank and payable to the United States Treasury or the United States Marshal. This policy has also applied to deposits mandated by this court or by statute.

4. This policy is required to avoid the difficulties encountered in collecting monies through personal checks or certified checks payable to individuals or parties other than the United States Treasury or the United States Marshal. Acceptance of doubly and triply endorsed checks is fraught with problems.

Similarly, Paccione in her affidavit states that throughout her seventeen year tenure at the U.S. Marshal's Service, "it has been the established policy and procedure of the office to accept such payment only in cash or in certified check(s) payable to the United States Marshal or to the U.S. Treasury." The bank checks offered by Dedvukaj would have required multiple indorsements[2] and as indicated above, that is exactly what the Marshal avoids by requiring cash or certified check(s) payable to the U.S. Marshal or to the U.S. Treasury.

■ Moreover the Terms of Sale specifically state that ten percent of the purchase money "will be required to be paid in cash or certified check to said Marshal." The terms or conditions prescribed for a judicial sale are binding on any purchaser. *Erie Coal & Coke Corp. v. United States*, 266 U.S. 518, 45 S.Ct. 181, 69 L.Ed. 417 (1925); *Ferry v. Udall*, 336 F.2d 706 (9th Cir. 1964), *cert. denied*, 381 U.S. 904 (1965); *In re Sapolin Paints, Inc.*, 11 B.R. 930, 936 (S.D.N.Y.1981); *Matter of Premier Container*, 95 Misc.2d 859, 408 N.Y.S.2d 725, 730 (Sup.Ct. Queens Co. 1978). Mihailoff read out loud the Terms of Sale before the bidding began. He then made clear that a certified check would only be accepted if made payable to the U.S. Treasury or U.S. Marshal. Mihailoff repeated this requirement after the high bid made by Binder fell through. And once again, after Dedvukaj submitted the high bid of $651,000, the requirement was stated for a third time.

■ Despite the fact that the third party bank checks proffered by Dedvukaj did not conform with either the U.S. Marshal's practice and procedure or the Terms of Sale, Dedvukaj and Sorkin argue that the third party bank checks should nonetheless have been accepted by the Marshal as the

1. In his affidavit Dedvukaj stated that while Sorkin was arguing with the Marshal, he phoned his bank and informed an officer that an employee of his would pick up checks made payable to Dedvukaj from the bank and told Mihailoff his employee would be at the courthouse with the checks shortly. In his affidavit, Mihailoff does not indicate that this statement was made to him or that he approved any such action.

2. Presumably, as payment would have been required from the highest bidder, Sorkin would have indorsed the checks over to Dedvukaj and Dedvukaj in turn would have indorsed them over to the Marshal. Movants appear to argue that Mihailoff should have accepted the checks because they were not offered by Dedvukaj individually but on behalf of the joint venture between Dedvukaj and Sorkin. Because the movants did not identify themselves as joint venturers at the time of bidding but instead listed their names separately as different bidders, it is unnecessary for this court to address the joint venture statu· of movants.

equivalent of cash or certified checks. The only support to which they point is *Tupper Lake National Bank v. Chimney Rock, Inc.,* 32 A.D.2d 588, 299 N.Y.S.2d 462 (3d Dep't 1969). If anything, however, *Tupper* dictates that Mihailoff properly refused the checks.[3] In *Tupper* the Referee would not accept as a portion of the required payment by the high bidder a check issued by a bank to a third party although a person present at the sale said he was the person named as payee. The high bidder requested time to "travel to a nearby community" to obtain that portion of the payment in the form of a proper instrument. The Referee consented, requiring payment within five minutes. At the end of that time, the Referee struck down the premises to another bidder. The Appellate Division found that the Referee had acted unreasonably and ordered the Referee to accept the high bidder's payment "in cash or by certified check made payable to the order of the Referee." The court's conclusion, however, was not that the Referee had improperly refused to accept the third party's bank check, but rather that in exercising his discretion to permit the bidder to travel to procure proper payment instruments, the Referee was required to allow a reasonable time for such procurance and five minutes under the circumstances was found to be unreasonable.

An officer of the court can exercise reasonable discretion in conducting a sale. *See Blossom v. Railroad Co.,* 70 U.S. [3 Wall.] 196, 18 L.Ed. 43 (1866); *Quinn v. S.S. Jian,* 235 F.Supp. 975 (D.Md.1964). The failure of two bidders to comply with the Terms of Sale, coupled with the attendant confusion and uncertainty made it unlikely that a fair and meaningful sale could be held on June 4, 1982. As such, the sale was properly adjourned. Having rejected Binder's request either to submit a personal check or to wait until Binder returned with his certified check it would have been improper for Mihailoff to accept third party bank checks

proffered by Dedvukaj or even to wait until Dedvukaj returned with the proper form of payment. For these and the reasons discussed above, Dedvukaj's and Sorkin's motion is denied.

IT IS SO ORDERED.

---

**3.** There is language in *Tupper* indicating that the Referee accepted as partial payment from the high bidder "(as the equivalent of certified checks) two checks issued by a bank ...." 299 N.Y.S.2d at 463. The opinion does not indicate to whom the checks were made payable. However, the portion of *Tupper* relevant to this discussion is that dealing with the third party bank check made out to one other than the high bidder as is the case here.