In re PARR MEADOWS RACING ASSOCIATION, INC., Debtor.

In re Ronald J. PARR, Bankrupt.

Harry GRANT, Appellant,

v.

James BARR, and Harvey L. Goldstein, as Trustees in Bankruptcy, respectively, of Parr Meadows Racing Association, Inc. and Ronald J. Parr, Appellees.

No. 87 M 33.

United States District Court, E.D. New York.

Oct. 13, 1987.

David M. Friedman, New York City (Finley Kumble Wagner Heine Underberg Manley Meyerson & Casey), for appellant.

William R. Fabrizio and Harry R. Varon, New York City (Hahn & Hessen), for appellees.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is an appeal under 28 U.S.C. § 158(a) from a decision of the Bankruptcy Court (Hall, J.) that (1) denied appellant's motion to compel appellees to produce an estoppel certificate from a mortagagor prior to a Bankruptcy Court sale closing, and (2) amended the sale Approval Order to state that the sale was free and clear of liens. For the reasons set forth below, the decision is affirmed.

## FACTS

James Barr and Harvey L. Goldstein ("Appellees") are Trustees in Bankruptcy of, respectively, Parr Meadows Racing Association, Incorporated ("Parr Meadows") and Ronald J. Parr. Pursuant to a Bankruptcy Court order, appellees sold certain property of Parr Meadows' estate to a predecessor-in-interest of Suffolk Meadow Corporation ("Suffolk Meadow"), the present owner. As partial consideration for the sale, appellees received a note in the sum of $10.75 million bearing interest at the rate of 11.5%, as well as a purchase money mortgage on the property constituting a first lien ("Mortgage and Note").

Wilbur F. Breslin and Robert Frankel submitted to appellees a written offer dated August 11, 1986 ("Offer") to purchase the Mortgage and Note for $7 million. The Offer stated, among other things, that it was "predicated on the presumption that no rights under the Mortgage Note and Mortgage have been waived and that the Note and Mortgage are in full force and effect for the full amount thereof." Offer, at 2. The Offer also stated that it was

made on the understanding that the said Note and the Mortgage securing the said Note are, and will, at closing, be, valid and subsisting obligations of the Maker thereof and are, and will, at closing and following closing, be enforceable in accordance with their terms and that the said Mortgage constitutes and will then constitute a valid first mortgage lien on the premises described in the said Mort-

gage with no other prior liens, encumbrances, restrictions, agreements or covenants relating thereto which shall not have been disclosed to our clients prior to the closing pursuant to the acceptance of our offer and accepted by our clients as permissible encumbrances.

Offer, at 4. The proposed payment was subsequently raised to $7.4 million.

On November 20, 1986 appellees—as mortgagees—sought authority from the Bankruptcy Court to assign all of their right, title, and interest in the Mortgage and Note to Breslin and Frankel, subject to the Offer's terms and conditions. A copy of the Offer was appended to the application.

The Bankruptcy Court scheduled a hearing for December 11 to consider the application and to hear better offers. Pursuant to the Court's order, notice of the hearing was sent to all creditors and was published twice in the *New York Times*. Notice stated that terms of the sale were to be "as set forth in the [O]ffer," and that the Offer was on file with the Court.

At the December 11 hearing, appellees' counsel and the court stated that, with the exception of claims arising from unpaid taxes, the sale was being made under the same terms and conditions as in the Offer. Transcript of Hearing Held December 11, 1986 ("December 11 Tr."), at 14. Appellees' counsel also stated that appellees were selling their "right, title and interest" in the Mortgage and Note, December 11 Tr., at 7, and that the Mortgage constituted a "first lien on the property," December 11 Tr., at 7–8. The successful bidder would be required to deposit ten percent of the purchase price within two days of the approval of the sale, with the balance to be paid at closing. Counsel for the bidders raised the tax issue, and persuaded appellees' counsel to extend the closing date to January 31, 1987. December 11 Tr., at 8–9.

Thereafter, bidding commenced. Appellant emerged as the highest bidder, with an offer of $9.75 million. December 11 Tr., at 16. On December 12, the court signed an "Order Approving Sale of Note and Mortgage" ("Approval Order") submitted by appellees at the court's direction. The Approval Order referred to neither an estoppel certificate nor to whether the sale had been free and clear of liens. A closing date of January 31, 1987 was established. Appellant thereafter deposited $975,000.

By letter dated January 16, 1987, appellant's counsel informed appellees that appellant would require an estoppel certificate from Suffolk Meadow—the mortgagor—certifying the unpaid principal balance on the Mortgage, the accrued but unpaid interest, and Suffolk Meadow's failure to pay back the principal. Appellees refused to tender the certificate, asserting that Suffolk Meadow did not wish to provide it.

By application dated January 29, 1987 appellant moved the Bankruptcy Court to enter a supplemental order that would, among other things, (1) authorize appellees to sell the Mortgage free and clear of liens, claims, and encumbrances, and (2) condition the sale upon delivery by the appellees to appellant of an estoppel certificate from Suffolk Meadow. By order to show cause, appellant also requested an extension of the closing deadline pending the court's determination of the application.

The Bankruptcy Court heard argument on the show cause order on January 30. Appellant argued that the offer conditioned sale on the Mortgage being in full force and effect for the full amount of the debt plus interest, and that delivery of the estoppel certificate was the sole means by which satisfaction of this condition could be ascertained. Appellant also argued that since the Mortgage was encumbered by approximately $20 million in liens, a court order authorizing sale free and clear of liens was critical.

Shortly after argument, the judge issued a written order denying the application. The judge found that the Offer did not contemplate delivery of an estoppel certificate, that appellant had not requested such a certificate, and that an estoppel certificate was mentioned in neither the December 11 hearing nor the Approval Order. The judge concluded that appellant's insistence on receipt of an estoppel certificate

was unjustified. In addition, the judge determined that the Offer and December 11 hearing made it clear that the sale was to be free and clear of liens. The judge amended the Approval Order to state that the sale was free and clear of liens. Finally, the judge denied appellant's request for an extension of the closing date.

On February 2, appellant filed a notice of appeal in this Court. Upon appellant's application, the Court ordered a stay of the sale of the Mortgage as well as a forfeiture of appellant's deposit, pending determination of the appeal. On February 11, appellees tendered the estoppel certificate. Appellant indicated that he would not close. By agreement of the parties, the Court lifted the stay against sale of the Mortgage. The stay against forfeiture of appellant's deposit was extended pending determination of this appeal.

Appellant argues that the Bankruptcy Court incorrectly decided that receipt of an estoppel certificate was not a condition of closing. Appellant first asserts that receipt of such a certificate is implied in law whenever purchase of a mortgage debt is conditioned upon the debt being enforceable and of a particular amount. Even if the law does not imply such a right, he argues, the parties intended such a condition here. Finally, he argues that the Bankruptcy Court improperly denied him the right to a hearing where he could introduce evidence of custom and usage in the real estate industry to show that the sale contemplated receipt of an estoppel certificate. Appellant also argues that the Bankruptcy Court's amended order that stated the sale was free and clear of liens was ineffectual because it was based on a misapprehension of the record and was entered without proper notice to lienholders.

## DISCUSSION

### I. Transfer of Estoppel Certificate

■ Appellant argues that *Oppenheimer v. Humphreys*, 9 N.Y.S. 840 (1st Dep't 1890), *aff'd without opinion*, 125 N.Y. 733, 26 N.E. 757 (1891) controls this case, and

entitles him to receipt of an estoppel certificate as a matter of law. In *Oppenheimer*, the defendant vendors—who were the mortgagors—contracted to sell real property to plaintiff.[1] The contract specified that payment would include, among other things, plaintiff's assumption of a $16,000 mortgage on the property at a five percent interest rate. A subsequent title search revealed that the mortgage of record was for $22,000 at seven percent. Plaintiff then demanded that defendants transfer to plaintiff an estoppel certificate from the mortgagee concerning the amount and terms of the mortgage. Defendants advised plaintiff that they could not procure such a certificate because the mortgagee was traveling abroad. The defendants offered plaintiff an opportunity to inspect the mortgage, which, on its face, showed indorsements on payments of principal and interest. The defendants also offered to provide plaintiff with an affidavit from one of the defendants stating that $6,000 had been paid on the mortgage. The plaintiff refused to accept anything but an estoppel certificate, which defendants did not produce prior to closing. Plaintiff sued to recover his deposit. The trial court entered a directed verdict in his favor. The First Department affirmed. *Id.* at 840–41.

The court first noted that a purchaser is not bound to complete a real estate contract unless the title tendered is free from reasonable doubt. *Id.* at 841. The Court found that defendants' various proposals were insufficient to remove the reasonable doubt concerning the mortgage that the title search had created. *Id.* Under these circumstances, plaintiff was

> entitled to demand, if the mortgage had been reduced to the extent claimed, such evidence of the fact as would enable him to spread the same upon the record, so that, no matter who might die, or what might become of the original bond in question, the records would show precisely the extent to which the mortgage was a lien, and it does not seem that

anything less than this would satisfy the requirements of the law.

*Id.*

It is difficult to read *Oppenheimer* as establishing an implied-in-law right in every real estate transaction to receipt of an estoppel certificate. On the contrary, in *Oppenheimer* plaintiff's right to receipt of the estoppel certificate flowed not from the contract, but from the cloud on record title disclosed by the title search. Delivery of an estoppel certificate signed by the mortgagee was the only means by which plaintiff could have clear record title without risking litigation concerning the amount and terms of the mortgage. *See Grace v. Nappa*, 46 N.Y.2d 560, 566, 415 N.Y.S.2d 793, 796, 389 N.E.2d 107, 110 (1979).[2]

Here, appellant produced no evidence to show that the amount of Mortgage was anything other than what appellees represented it to be. As a result, the *Oppenheimer* rationale does not apply, and the circumstances do not give appellant an implied-in-law right to receipt of an estoppel certificate prior to closing.

Appellant next argues that the ordinary rules of contract construction required delivery of an estoppel certificate. I disagree. Reference to such a certificate was noticeably absent from every stage of the proceedings. It was not mentioned in the Offer. None of the parties referred to it at the December 11 hearing. It was not referred to in the Approval Order, which appellant did not object to until more than six weeks after its entry. Given the sophistication of the parties, the fact that the Offer was quite detailed and specific, and the absence of any mention of an estoppel certificate until shortly before closing, the Bankruptcy Court did not err when it concluded that receipt of such a certificate was not a condition in the sales contract.

■ Finally, appellant argues that the Bankruptcy Court's failure to hold an evidentiary hearing regarding the terms of the sale constituted a due process violation. A purchaser at a judicial sale is bound by the terms and conditions established at the sale. *See United States v. Thwaites Place Associates*, 548 F.Supp. 94, 96 (S.D.N.Y. 1982), *aff'd without opinion*, 722 F.2d 729 (2d Cir.1983). Here, the Bankruptcy Court had extensive firsthand experience with the sale. It set the hearing date, clarified the terms of the Offer, and presided over the auction. Finally, it approved the sale. Its subsequent decision concerning the estoppel certificate was thus based on a record with which it was well acquainted. At the January 30 hearing, appellant argued that evidence of real estate custom and usage would assist the court in interpreting the sales contract. This line of reasoning was implicitly rejected in the Court's decision. Undaunted, appellant now presents the same argument to this Court under the guise of a due process claim. After a thorough review of the record, I conclude that, under the circumstances, the Bankruptcy Court afforded appellant more than an adequate opportunity to be heard. Appellant's due process claim is therefore rejected.

## II. Sale Free and Clear of Liens

■ Appellant next asserts that the Bankruptcy Court improperly amended the Approval Order to state that the sale was free and clear of liens. Curiously, appellant's counsel took a different position at the January 30 Hearing, stating: "[I]t is critical that an order of the Court be entered which authorizes the sale of this mortgage free and clear of liens." Transcript of Hearing Held January 30, 1987, at 5. Counsel did not argue then that the notice to lienholders omitted this provision, and did not dispute appellees' assertion that the Offer and December 11 hearing clearly contemplated a sale free and clear of liens, although the term was omitted in the Approval Order. The Bankruptcy Court subsequently amended the order to rectify the deficiency.

Having reviewed the record, the Court concludes that the amendment was proper because it is clear that the mortgage sale was free and clear of liens. Such terms

---

**2.** The Court notes, not without irony, that appellant's use of *Oppenheimer*, with its emphases on fairness, certainty, and avoidance of litigation, has somewhat undermined the integrity of the judicial sale here and has added to the length of this litigation.

were specified in the Offer. *See* Offer, at 4. At the December 11 hearing, appellees' counsel stated that the terms of sale were as specified in the Offer. December 11 Tr., at 15. Such terms may also be implied from the sale price. Appellant would have this Court believe that he contracted to pay $9.75 million—and someone else bid $9.5 million—for a $10.75 million mortgage that he understood to be subject to more than $20 million in encumbrances. Clearly, this was not the case. All parties involved in the December 11 hearing understood that the sale was to be free and clear of liens. Similarly, the notice to lienholders contained sufficient notice that the sale was to be free and clear of liens because it stated that the sale terms were as specified in the Offer. The Bankruptcy Court's amendment, which clarified the terms of sale, was therefore proper.

CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED. The stay against forfeiture of appellant's deposit is hereby lifted.

SO ORDERED.