**GOTKIN et al. v. KORN.**

No. 10372.

United States Court of Appeals
District of Columbia Circuit.

Argued March 6, 1950.

Decided May 1, 1950.

Mr. Harry Kay, Washington, D. C., with whom Mr. Milton M. Burke, Washington, D. C., was on the brief, for appellants.

Mr. Edward E. O'Neill, Washington, D. C., for appellee.

Before WILBUR K. MILLER, PROCTOR and WASHINGTON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Certain chattels of a bankrupt were sold by his trustee subject to existing liens and encumbrances. The question is whether the holder of a valid recorded lien thereon lost his security as against the purchaser because he did not prove a claim with respect thereto against the bankrupt's estate within six months after the first meeting of creditors.

The Gotkin brothers, who are appellants here, held a promissory note executed by Holtzman and wife and secured by a third chattel deed of trust on the fixtures and merchandise in Holtzman's grocery, which they placed with the Bank of Commerce and Savings for collection. The same assets were subject to a first deed of trust in favor of that bank, and to a second in favor of other creditors. After making certain partial payments on the note, Holtzman filed a voluntary petition in bankruptcy and listed the bank in Schedule A-2, which is "Creditors Holding Securities", as the creditor holding both the first and third deeds of trust. This erroneous listing caused official notices from the bankruptcy court with respect to the third lien to go to the bank as such, and not to the Gotkins. The latter allege the bank did not pass any notice on to them, nor inform them thereof. The parties differ sharply as to whether notice to the bank constituted notice to the Gotkins,—a question we do not decide because we regard it as immaterial for reasons which will appear later in this opinion.

At the first meeting of creditors the referee announced he would sign an order, without further notice, directing the trustee to sell the assets (all of which were in lien to the Gotkins and others) at public auction, but the referee did not say the assets would be ordered sold free of liens and encumbrances. Pursuant to this announcement, the trustee sold the encumbered assets to Philip Korn, the appellee here.

The trustee, in his final report, said the holders of the first and second deeds of trust had released the chattels to him and had been paid from the proceeds of the sale, after which the excess of the proceeds was distributed to unsecured creditors.

With respect to the third lien, held by the Gotkins although scheduled as held by the bank, the trustee reported as follows:

"No claim asserted by creditor nor any claim recorded. Disallowed by trustee." The bankruptcy court on March 15, 1949, entered an order approving the trustee's final report and account, discharging him and closing the estate. Just prior to the entry of that order, the referee signed and entered the following:

"It having been brought to the attention of the Referee in Bankruptcy that on April 7, 1948, at the first meeting of creditors he announced that he would sign an order for the trustee to sell the assets at public auction without further notice to creditors and that a formal order has not been signed or filed, and the Referee desiring to perfect the record in accord with the minutes of the first meeting of creditors filed herein on April 7, 1948, and in pursuance of the action taken at the first meeting of creditors of the above named bankrupt, it is this 15th day of March, 1949, effective as of the 7th day of April, 1948,

"ORDERED that the trustee herein be and he is hereby authorized and directed to sell the tangible assets belonging to the estate of the above-named bankrupt, forthwith, at public auction, for cash, without notice to creditors.

"The said trustee is further authorized to employ an auctioneer to conduct said sale at a rate of compensation not to exceed five per cent of the gross amount realized from said sale."

That the bankruptcy court did not order the assets to be sold free of liens and encumbrances is thus unmistakably clear.

Some three weeks after the entry of the orders just referred to, the Gotkins sued Holtzman and wife, Philip Korn and the Bank of Commerce and Savings, asking the District Court for a declaration of rights with respect to their note and the securing lien. They alleged the bank did not inform them of the Holtzman bankruptcy and therefore they knew nothing of what had happened until after the trustee's final report and account had been confirmed. They prayed the court to declare the

Holtzmans to be still liable on the note, the assets sold to Korn to be still subject to their lien, and the bank to be liable to them for failing to notify them of the bankruptcy. When Korn's motion for summary judgment was granted and the complaint was dismissed as to him by the District Court, this appeal followed. We are not concerned, therefore, with the cause of action asserted against the Holtzmans and the bank, but only with the sufficiency of the complaint as to Korn.

■■ In the absence of any reference to the contrary in the order of sale, a bankruptcy sale is made subject to valid liens and other encumbrances, in which case the interests of the lien holders are in no way affected by the sale.[1] Under this established rule, which is not disputed by the appellee, the sale here was made subject to liens. The trustee's report indicates, as has been said, that the first two lien holders surrendered the chattels to him and were paid from the proceeds, doubtless pursuant to an informal agreement to that effect. As no such arrangement was made with respect to the third lien, it survived the sale.

■ Even so, the appellee contends the Gotkins lost their lien by not proving their claim, an argument which assumes that it was necessary for them to prove in order to preserve their security. It is true that when a bankruptcy court exercises its jurisdiction to sell, free of liens, encumbered property which is in its actual or constructive possession, it has the further exclusive power to determine the validity, amount and priority of all liens and encumbrances thereon and to enjoin proceedings in any

other court concerning the property or the liens. So, in such a case, holders of secured claims are required to come into the bankruptcy proceeding, as there is no other forum in which they can seek to protect their security.[2] But when a sale free of liens is ordered, invariably the order provides for a transfer of all valid encumbrances from the *res* to its proceeds. The bankruptcy court has power to displace existing liens only to the extent to which it imposes them upon the proceeds, so as to give the lien holders the opportunity to prosecute their rights and priorities against the fund resulting from the sale.[3]

■ It is perfectly clear, however, that when, as here, the bankruptcy court chooses to sell encumbered property subject to liens, it elects to sell only the bankrupt's equity therein and so, in effect, declines to exercise its exclusive power to deal with the liens, and relegates their holders to the enforcement remedies which would have been available to them had the lienee's bankruptcy not occurred. In such cases, proof of claim is not necessary to save the security.[4] This situation being of that nature, and proof of claim by the Gotkins being unnecessary, it is immaterial whether the notice of the bankruptcy proceeding which was given to the bank was notice to the Gotkins.

Instead of being a collateral attack on the judicial sale, as Korn contends, the complaint against him is an attack on his erroneous idea that he bought the assets free of the appellants' third lien. Consequently, the complaint seeks a declaration of the true effect of the sale, and is not an attack

---

1. In re Platteville Foundry & Machine Co., D.C.W.D.Wis.1906, 147 F. 828; Smith v. Chase National Bank, 8 Cir., 1936, 84 F.2d 608; Collier, Bankruptcy § 70.97, pp. 1545-6, vol. 4 (14th ed.).

2. Isaacs v. Hobbs Tie & Timber Co., 1931, 282 U.S. 734, 51 S.Ct. 270, 75 L. Ed. 645.

3. Collier, Bankruptcy § 70.99, p. 1600, vol. 4 (14th ed.).

4. Remington, Bankruptcy § 907, p. 419, vol. 2 (4th ed. 1940):
   "The failure of a secured creditor to

file any proof of claim whatsoever will not result in the loss of the security to him; for proofs of claim are primarily for unsecured claims or the unsecured portion of a partially secured claim, to determine the proportion in which it may share in the dividends.
   \*   \*   \*   \*   \*   \*
   "A secured creditor may rely on his security, but if he wishes to receive dividends with respect to the deficiency he must file proof like any unsecured creditor within the time limited for filing."

upon it. It is the appellee who seeks to change the effect of the sale.

In sum, we hold (a) that this suit is not a collateral attack on the sale; (b) that the sale was made subject to valid liens; (c) that, therefore, the appellants were not required to prove their claim in the bankruptcy proceeding in order to save their security and so, whether notice of such proceeding given to the bank was notice to the appellants, is immaterial; and (d) that, since the assets were sold subject to valid liens, the sale did not extinguish the appellants' lien which was valid and recorded, and Korn took the property subject thereto.

This results in no injustice to the appellee, who has only himself to blame for his predicament. He had constructive notice of the third lien because of its recordation, as well as because it was listed in the schedule. He could have ascertained from the record in the bankruptcy case that the property had not been surrendered to the trustee by the third lien holder and that it was being sold subject to that lien. He was, therefore, fully apprised of the situation when he bought the property.

Reversed.

WASHINGTON, Circuit Judge (concurring).

The sole question actually before us is whether summary judgment for the defendant Korn was proper. I do not think it was. The plaintiff's complaint stated on its face a valid cause of action against Korn, and nothing in the present record is sufficient to defeat it. I accordingly agree that the judgment of the District Court must be reversed.

On the other hand, this court is not in a position, prior to trial and with a meager record before us, to conclude affirmatively and with finality that the plaintiff's lien still subsists, or that there is no equitable defense against its enforcement. "To do so would be to infringe upon the lower court's prerogative to decide the case on the merits." Dollar v. Land, 81 U.S.App. D.C. 28, at 33, 154 F.2d 307, 312, affirmed 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209.