**ROSEHEDGE CORPORATION,**
Appellant,

v.

**Millie STERETT, Appellee.**

No. 15915.

United States Court of Appeals
Ninth Circuit.

Jan. 28, 1960.

Charles J. Katz, Samuel W. Blum, Los Angeles, Cal., William G. Ruymann, Las Vegas, Nev., for appellant.

Arthur N. Greenberg, Los Angeles, Cal., for appellee.

Before STEPHENS, BARNES and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

This case involves proceedings under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., which have culminated in a sale of the properties of the bankrupt. The properties were purchased on behalf of Appellant Rosehedge, a secured creditor of the bankrupt. The District Court, upon a review of the order of the referee confirming the sale, entered its order approving and confirming the sale, but added a proviso the effect of which was to cancel appellant's chattel mortgage upon the personal property included in the sale. This appeal is taken from that provision in the order of the District Court.

The ultimate question is whether, in purchasing the property of the bankrupt, Rosehedge had utilized its claim against the bankrupt as a credit upon or part payment of the purchase price. If so, the claim had been satisfied and it was proper to require the cancellation or surrender of the security for such debt.

Rosehedge assigns as error the judgment of the District Court upon this ultimate question. It further contends that, in entertaining the question at all, the District Court acted without jurisdiction or in abuse of discretion.

The bankrupt is Moulin Rouge, Inc., which owned real and personal property in Las Vegas, Nevada.

The claim of Rosehedge against the bankrupt was in the sum of $154,846.65. This one debt was secured in two ways: first, by a trust deed dated May 24, 1955, covering the realty of the bankrupt; second, by a chattel mortgage of the same date against the personal property of the bankrupt.

Appellee Sterett had a claim against the bankrupt in the sum of $35,000, secured by a chattel mortgage against the personal property of the bankrupt dated July 5, 1955, and subsequent in priority to the Rosehedge chattel mortgage.

On September 6, 1957, the real and personal property of the bankrupt estate was sold to one S. Kohn, who was acting for and on behalf of Rosehedge. The bid of S. Kohn was in writing and purported on its face to be subject to the Rosehedge deed of trust and to the Rosehedge and Sterett chattel mortgages. This sale was confirmed by order of the referee on September 23, 1957.

On October 3, 1957, Sterett (joined by the bankrupt and by a general creditor) petitioned the District Court for review of the order confirming sale in an effort to have the sale set aside. The contention that the claim of Rosehedge had been satisfied by the sale was not made in the petition for review. Hearing on this petition was had before the District Court on October 28, 1957. The petition was denied and the sale approved and confirmed.

In the course of the hearing before the District Court, Sterett filed a memorandum of law in support of her petition. In this memorandum, for the first time, she urged that the claim of Rosehedge had been satisfied. This suggestion was adopted by the court. In its order of confirmation, it ordered Rosehedge to de-

posit in escrow a release of its chattel mortgage.

■ Rosehedge first contends that the District Court improperly entertained Sterett's petition for review, claiming that Sterett was not aggrieved by the referee's order confirming sale and thus was not entitled to review of that order. Rosehedge relies upon the well established proposition that, where property is sold subject to existing mortgages, the sale cannot affect the security or remedy of any mortgagee, and therefore they cannot be regarded as aggrieved by the sale. Smith v. McKenna Brass Manufacturing Company, 3 Cir., 1938, 98 F.2d 537; In re Humeston, 2 Cir., 1936, 83 F.2d 187; In re North Star Ice & Coal Company, D.C.E.D.Tenn.1918, 252 F. 301. See, Gotkin v. Korn, 1950, 86 U.S.App.D.C. 372, 182 F.2d 380.

This contention, however, ignores the nature of the present dispute. In those cases where it is conceded that the sale in question was subject to all mortgages, it may well be true that a mortgagee would have no standing to challenge the propriety of such sale.

Here, however, the very issue is whether the sale was subject to Rosehedge's deed of trust and chattel mortgage or was free and clear of such encumbrances with the debt being utilized and satisfied. The determination of this issue has a direct bearing upon the rights of Sterett with respect to the security for her claim. In the one case, the lien of Rosehedge is prior to hers; in the other, it is not.

■ It is true that the status of Sterett as an aggrieved party did not appear from the petition. This does not, however deprive the court of jurisdiction. Biggs v. Mays, 8 Cir., 1942, 125 F.2d 693; Forsher v. Graham, 6 Cir., 1929, 32 F.2d 654; cf. Pfister v. Northern Illinois Finance Co., 1942, 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146. The discretion of the court to entertain the dispute under these circumstances is discussed later in this opinion.

Accordingly, this contention is rejected.

Rosehedge next contends that the present controversy was not properly the concern of the court in bankruptcy, since the dispute is limited to the rights and priorities of private parties as between themselves and is not one in which either the trustee or the bankrupt estate has any interest.

■ Ordinarily a bankruptcy court cannot entertain jurisdiction of a collateral private controversy; e. g., Evarts v. Eloy Gin Corporation, 9 Cir., 1953, 204 F.2d 712, certiorari denied, 1953, 346 U.S. 876, 74 S.Ct. 129, 98 L.Ed. 384; Smith v. Chase National Bank, 8 Cir., 1936, 84 F.2d 608. Here, however, the dispute involved a review of proceedings had before the referee and the construction and clarification of those proceedings: matters in which the court has jurisdiction and interest. Accordingly, this contention is rejected.

■ We turn to a consideration of the judgment of the District Court upon the ultimate question involved in this dispute: whether the sale of the assets of the bankrupt was such as to extinguish the Rosehedge claim.

The District Court ruled as a matter of law that the Rosehedge claim was extinguished. This we are compelled to conclude was error. We need only refer to the language of the written bid submitted by S. Kohn on behalf of Rosehedge and accepted by the referee.

The bid was an offer to purchase the realty and improvements "for the sum of $116,000.00 cash free and clear of and from all liens, claims and encumbrances excepting the following * *." There follows a listing of eight exceptions, the eighth being the Rosehedge trust deed. The bid further specifies that the sum of $116,000 is to include all of the "furniture, furnishings, gaming equipment of all kinds and all other tangible personal property pertaining to the business of Moulin Rouge; but subject, however to all valid and subsisting conditional sales contracts and chattel mortgages against said personal property."

Upon the face of the bid, therefore, it would appear that the sale was for $116,000 cash; that the debt of Rosehedge was not to be utilized on account of the purchase price, and that the sale was to be of the property subject to the Rosehedge trust deed and chattel mortgage.

Rosehedge, for this reason, contends that it is entitled, as a matter of law, to judgment to the effect that its claim was not extinguished.

The bid, however, must be read in the context of the proceedings in the course of which it was submitted. The question is whether, when so read, the intent of the parties is clear.

We note the following history.

Prior to the commencement of bankruptcy proceedings, Rosehedge had commenced foreclosure of its trust deed. After commencement of the bankruptcy proceedings, October 19, 1955, this foreclosure was stayed by order of the referee. On June 19, 1956, Rosehedge and the trustee entered into a stipulation which provided that, pending the determination of certain motions and objections interposed by Rosehedge in the bankruptcy proceedings, the trustee might proceed to sale of the assets of the bankrupt "free and clear of and from the pledge liens held, possessed and asserted by * * * Rosehedge and free and clear of and from the lien imposed and created by the [Rosehedge] deed of trust. * * *." It then provided, as conditions, that the sale should be without prejudice to the rights, liens and security asserted or held by Rosehedge, but that its lien rights "shall be transferred to the proceeds derived from such sale * * *." Further, it was stipulated that Rosehedge might be a bidder at the sale and become a purchaser and, in bidding, "may and shall be entitled to use on account of any and all bids made * * * the amount of [its] * * * indebtedness * * *."

The sale of the bankrupt assets was ordered on July 6, 1956. As so ordered (and subject to the qualifying phrase, "upon such terms as the court shall hereafter approve"), it was a sale "free and clear of the liens set forth in the petition." Those liens were specified in the order of sale and included the Rosehedge trust deed and chattel mortgage. The order of sale further expressly approved the stipulation of June 19, 1956, between Rosehedge and the trustee. Thus the nature of the sale contemplated by the order was one free and clear of the Rosehedge liens with those liens transferred from the property to the proceeds of the sale.

At the time of sale in open court, counsel for Rosehedge announced the bid orally. In so doing, he stated:

"We do have an offer that we desire to submit, and our offer is, in effect, to pay the equivalent of roughly five hundred sixty or six hundred thousand dollars * * *."

During the course of the proceedings, the referee stated in explanation of the Rosehedge bid:

"There is a lot of technical terminology that might not be clear when you hear it read. What the offer in essence is is that Mr. Katz is bidding in the trust deeds held by Rosehedge and Leroy, and he also is paying an additional one hundred sixteen thousand. That one hundred sixteen thousand will go to pay expenses of administration."

After confirmation of the sale and the filing of Sterett's petition for review, the referee filed his certificate to the District Court with reference to that petition. In his certificate, the referee stated in part:

"This bid was made subject to the liens and claims of Leroy and Rosehedge. This, in the opinion of the Referee, at the time of sale, was the equivalent of utilizing the value of the Leroy and Rosehedge claims upon the bid made."

■ The intent of the parties in the light of all these matters does not appear to have been established beyond doubt. It was then error to rule as a matter of law that the Rosehedge debt had been satisfied and extinguished by

virtue of the sale. Rosehedge is entitled to a reversal in this respect. On the other hand, Rosehedge is not entitled to judgment establishing as a matter of law that its debt and security have survived the sale. The nature of the sale is dependent upon the intent of the parties, and this remains to be established factually.

The remaining question is whether this factual issue may now be resolved in these proceedings, the point now having been presented to the District Court through petition for review. If not, the proviso (that portion of the court's order directing that Rosehedge deposit a release of its chattel mortgage) must be stricken and the balance of the order of the court must stand.

■ Rosehedge contends that procedural neglect of Sterett has barred her right to further court consideration. It relies upon 11 U.S.C. § 67, sub. c, to the effect that the petition for review "shall set forth the order complained of and the alleged errors in respect thereto." Many authorities are cited by Rosehedge in support of its contention in this respect, with none of which have we any quarrel. They are for the most part rulings by District Courts to the effect that, under the particular circumstances, they need not entertain the proposition presented. This is not to say that in a proper case they could not. In re Moskowitz, D.C.W.D.Ky.1946, 63 F.Supp. 1000; In re Casaudoumecq, D.C.S.D.Cal.1942, 46 F.Supp. 718; In re Musgrave, D.C.N.D.W.Va.1939, 27 F. Supp. 341; In re Florsheim, D.C.S.D. Cal.1938, 24 F.Supp. 991; In re Kelly Dry-Goods Co., D.C.E.D.Wis.1900, 102 F. 747. There can be little doubt that Sterett had lost all right to complain. The question is whether the court upon its own motion can take note of a situation in which error appears to make for injustice.

With regard to the scope of District Court review, General Order 47, 11 U.S. C.A. following section 53, reads as follows:

"Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous. The judge after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

This language has been construed to apply not only to formal reports, but also to orders of a referee which are before the District Court upon review. Powell v. Wumkes, 9 Cir., 1944, 142 F.2d 4; Equitable Life Assur. Soc. of United States v. Carmody, 8 Cir., 1942, 131 F.2d 318; In re J. Rosen & Sons, 3 Cir., 1942, 130 F.2d 81; In re Byrd Coal Company, 2 Cir., 1936, 83 F.2d 190. Further, it has been recognized that the scope of the court review is not necessarily fixed by the petition, nor confined to issues presented before the referee. In re Samuel Wilde's Sons, 2 Cir., 1906, 144 F. 972; In re Wood, D.C.E.D.N.C.1899, 95 F. 946; cf. In re Elmore Cotton Mills, D.C. S.D.Ala.1914, 217 F. 810. Contra: In re Sam Z. Lorch & Co., D.C.W.D.Ky. 1912, 199 F. 944 (dictum); and see, In Matter of Paley, D.C.S.D.N.Y.1939, 26 F.Supp. 952.

In Powell v. Wumkes, supra, this Court, speaking of the powers of a District Judge upon review, as set forth in Special Order 47, stated (142 F.2d at page 6):

"Order 47 is not too happily phrased, but considering its provisions in their entirety it would seem that they do not shackle the judge to the extent that an appellate court is circumscribed by Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The judge has large supervisory powers. Where he confines himself to a review of the record made before the referee he is not permitted to try factual questions de novo, that is to say, he is not at liberty to reject the

findings of the referee merely because he disagrees with the latter as to the credibility of witnesses or the weight to be accorded conflicting evidence. But unlike an appellate court the judge is empowered, in appropriate circumstances, to receive further evidence; and on the basis of the enlarged record he may modify or make findings, or may recommit the matter for further hearing by the referee."

The court further quoted from a footnote in Rhodes v. Federal Land Bank of St. Paul, 8 Cir., 1944, 140 F.2d 612, 613, to the effect that the District Court may proceed, "if the record suggests that a gross miscarriage of justice probably had occurred, to test the situation by receiving additional evidence, and, in the new legal situation thus created, to make such disposition of the matter as the entire evidence before him appears soundly to demand."

It should be noted that the choice already made by the District Court to entertain the Sterett suggestion is different from the problem now presented. The court, in acting, proceeded upon the assumption (which we have held erroneous) that error appeared from the face of the record and all that remained was to correct it. The problem which now faces the court is that we do not know that error has been committed; that further hearings must be had if the nature of the sale in the light of the intent of the parties is to be established.

Under these circumstances, the question for the District Court is whether, in its judgment, there has been a miscarriage of justice; that is, whether the record demonstrates a possibility of error and, if so, whether the circumstances are such that the situation should now be tested by further hearings and findings of fact.

If the answer of the court to this question be in the affirmative, it may then proceed with further hearings before judge or referee, as deemed best. If the answer be in the negative, further hearing should be denied and the order of confirmation (less the proviso) should stand.

While the record places a heavy burden upon Sterett in the light of her defaults and the equitable potentials of estoppel and laches, we do not regard it as an impossible burden—one which as a matter of law cannot be met. Powell v. Wumkes, supra. The judgment to allow or to deny further hearings thus entails the exercise of judicial discretion and should be for the District Court and not for this Court upon this appeal.

Reversed and remanded for further proceedings in accordance with this opinion.