*861 OPINION OF THE COURT
Harold Hyman, J.
In this assignment for the benefit of creditors, the landlord of the premises previously occupied by the assignor and for a time thereafter also occupied by the assignee, brought on a motion to have the court direct the assignee to pay to said landlord the sum of $14,333.33 for "use and occupation and other clean up charges” of said premises.
As a result of said application, the assignee sought to implead one Paul J. Hogue (hereinafter Hogue), as a party respondent, contending that if the assignee was to be held liable to the landlord, then the assignee was entitled to recovery over as against Hogue because Hogue, as a purchaser at the auction sale, delayed in removing his purchases thereby causing such charges to accrue.
Hogue opposed the application and denied the material allegations thereof, thereby causing the assignee to seek the appointment of a special referee by the court to "hear and determine” the certain relevant issues. The court appointed such a referee to conduct a hearing of the issues and file his decision with all convenient speed and (stated that) upon the application to conñrm or disapprove said decision the court would fix the special referee’s fees and costs incurred and would also determine "who shall bear the cost of the reference among the parties”.
Although it might appear at first blush that the court intended the special referee to "hear and determine”, this court did not interpret such to be that court’s true intent, as garnered from its order. Had it been so, then why provide in the decretal paragraphs of the order for "confirmation or disapproval”? Having thus provided, this court considered the order to mean for the special referee to "hear and report” and, in so doing therefore provided for "approval or disapproval.”
The special referee filed his report on September 15, 1977 whereupon the assignee moved to modify the report pointing out ostensible and inherent errors in fact and law therein. As a result this court ordered a "hearing de novo” before the court, not the referee, to determine the issue as to the assignee’s liability for "use and occupation” of the premises from August 25, 1972 (the date of assignment) until November 3, 1972 (the alleged date the premises was vacated); that is, as to *862 whether the assignee was liable for that entire period. Whether the auctioneer, Hogue, or both, was or were liable for the whole or any part thereof and to what extent, is an issue which this court, in this proceeding has the power to determine (Matter of Sheldon, 173 NY 287; Debtor and Creditor Law, § 15, subds 3, 12, 15) and certainly therefore as to the responsibility of the auctioneer or Hogue to said assignee in the event the assignee be held responsible. That hearing was held over a period of two days during which extensive testimony was adduced.
The court finds that the assignor was a user and owner of heavy equipment which it had placed inside landlord’s premises; that assignor assigned for the benefit of its creditors on August 25, 1972; that the premises was owned by Container Realty Corporation who had leased it to the assignor years previous to the assignment; that the assignor had been occupying the premises under an expired written modification of the agreement at a rental of $10,000 per month. None of the parties contested such latter amount to be the "reasonable value of the use and occupation of said premises upon a monthly basis” and, the court, lacking any evidence to the contrary as to the presumption of such to be so (Hermann v Curiel, 3 App Div 511; Fink v Standard Bread Co., 61 Misc 626) and in the absence of a clear showing of unreasonableness (Walton v Stafford, 162 NY 558) finds that the reasonable value of use and occupation per month of said premises was $10,000.
Following the execution of the assignment, and the virtually simultaneous qualification of the assignee, the personal property, equipment and machinery of the assignor was ordered to be sold by an auctioneer selected by the assignee; the sale was duly advertised to be held, and was actually held on September 13, 1972.
On November 14, 1972 the landlord, Container Realty Corp. billed the assignee for (a) use and occupation from August 25, 1972 to November 3, 1972. 2 months and 10 days, at $10,000 per month — $23,333.33; and for (b) removal of debris and cleaning premises after sale by auctioneer, $6,000; a total of $29,333.33.
On May 21, 1973, the landlord and assignee entered into a written stipulation, as to which court approval had not been sought, wherein they agreed, that (1) landlord withdrew its motion seeking $6,000 for "cleaning” as an "administration *863 expense” but reserved its right to file such as a "general claim”; and (2) that assignee would pay landlord $8,333.33 for "use and occupation” (having paid $15,000 on account prior thereto), with the condition that "if the Assignee not be held liable for such $8,333.33 or any part thereof, landlord would return the whole $8,333.33 or such part thereof to the assignee.”
What period of time did the $15,000 encompass? Apparently from August 25 to October 9, 1972, inclusive: a period of one and a half months.
What period of time does the $8,333.33 encompass? Apparently from October 10, 1972 to November 3, 1972, 25 days.
The sale was held on September 13, 1972; merchandise purchased was to be paid for immediately on purchase; and, because of the nature of the merchandise sold, the auctioneer, with the consent of the assignee, allowed for a period of 14 "working days” for purchase "removals”, namely until October 3, 1972.
Hogue had purchased items totaling $109,517; he paid $25,-000 that day and made certain interim payments until he received a "final notice” that unless he paid the balance a "resale” would be held as to his purchases; the final notice gave him until October 6, 1972; on the last day, October 6, 1972, he paid the balance due. In the interim he had been removing or preparing to remove some of the items he had purchased, since the sales to him were "individual” items. By September 29, 1972 he had removed a number of items, but still had others to remove, which ostensibly had not as yet been paid for by him. No reason has been given why Hogue did not pay until October 6, 1972. No reason has been shown why the auctioneer permitted such delay to ensue, except the asserted excuse that because of the size and heavy nature of the equipment purchased, it would have been impracticable to have the auctioneer hold a resale of such merchandise. The excuse is not acceptable. In view of the fact that the major item involved, purchased by Hogue, the "S and S Complete Corrugator” was the subject of a suit brought by "Corrugated” against Hogue based upon an alleged agreement by Hogue to sell it to said Corrugated, which action was also brought in this court and in which action Justice Mario J. Cariello on September 27, 1972 temporarily enjoined Hogue from "selling or disposing” of said machine until October 4, 1972 (the stay or injunction being thereafter lifted) there was definitively *864 indicated an interest and distinct desire by Corrugated to purchase and obtain said machine, at least at the price for which it was purchased by Hogue. Therefore with the $25,000 which had already been paid by Hogue at the time of purchase, which could have been used as a cushion against any damage which might have been incurred, the auctioneer could very easily have obtained an order for the resale of said machine; or, the assignee, within the same period of time between September 13 and 29, 1972, could have obtained an order to show cause why resale should not be had unless Hogue paid the balance plus the “additional” cost for the “use and occupation” of the premises which might possibly accumulate against assignee because of his failing to vacate beyond the two-week period of removal. The "removal of the machinery” originally allowed by assignee and auctioneer had nothing to do with the terms of sale which required “immediate payment” for any purchase.
There is no denial by the auctioneer or the assignee that they knew of Corrugated Leasing Corporation’s suit against Hogue; to the contrary, it appears to have been common knowledge among all parties herein. Thus there cannot now be claimed that there was a dearth of purchasers for that machine; the contrary is unequivocally obvious and true.
The litigation with Corrugated may also represent a reason why Hogue did not remove the item, but as such it is not a viable base for absolution against the assignee or the auctioneer. If Hogue had any damage or claim resulting from that litigation he may have a right to seek such redress therefor, if so advised, from Corrugated.
It is therefore found by this court that the granting to Hogue of time to pay and or remove beyond the 14-day working period allowed to “all purchasers” (including Hogue, October 3, 1972) was an improper exercise of discretion by the assignee and the auctioneer; but, since, in this case it is, to a degree based upon the totality of the circumstances, minimal, the court will refrain from surcharging the assignee who knowledgeably permitted such extension.
But the period from October 6, 1972 to November 3, 1972 is another matter.
With respect to the latter period of time, Hogue contends that he was held back by the landlord’s failure to perform certain necessary acts, by lack of having available to him of “the elevator” facility; that he also agreed with the auctioneer *865 to allow him the time provided he paid the auctioneer’s representative at the building certain moneys for allowing him to work beyond hours and on Saturdays and Sundays. The so-called "representative” of the auctioneer was not available as a witness at the court hearing; he had died prior thereto.
As to the first excuse above stated, in an affidavit opposing payment for "use and occupation” sworn to by Hogue on February 27, 1973 he swore that he could not use the "freight elevators” as a reason for his being in the premises until November 3, 1972, but in truth and in fact the premises had no freight elevators and he so admitted at the hearing; that he paid the auctioneer’s representative, Heifer, extra moneys to allow him to remove his purchases up to November 2, 1972 was not one of the reasons set forth in his opposing affidavit of February 27, 1973; but, this court cannot and will not rule oút that such an agreement did exist between him and the auctioneer, for if every other purchaser had removed his purchases by October 6, 1972, why was it necessary for Heifer, the auctioneer’s representative, to be at the premises "attending delivery” on October 9-13, 16-20, 23-27, 30-31, November 1-3, 1972 at a cost to the estate of $35 per day, or a total of $700 for 20 days, the last day, November 3, 1972 being the day the auctioneer turned the keys over to the landlord.
There is no testimony or evidence that the assignee gave consent to any such extension of time beyond October 6, 1972. The auctioneer testified that the extension of time to October 6, 1972 granted to Hogue by him with the assignee’s consent, was based upon Hogue’s failure to pay the full amount due on his purchases until that date and the auctioneer’s refusal to allow Hogue to revoke any article purchased by him until fully paid for and, because of the size of the equipment, the possibility of a loss upon a resale; as to the latter reason the court has already indicated its disagreement and disapproval. The auctioneer testified that he advised Hogue of his, Hogue’s responsibility for "use and occupation” for any period beyond October 6, 1972.
There seems to be no doubt that Hogue was allowed to remove his purchases for a period beyond October 6, 1972 to which latter date only the assignee (by his attorneys) granted permission; but, there is also no doubt that the auctioneer and Hogue both remained in the premises until November 3, 1972, Hogue to remove his purchases and the auctioneer supervising *866 the "delivery” thereof, and that neither had the consent or approval of the assignee or his attorneys to any such arrangement.
 It is at this point that the court wishes to point out the legal position of the auctioneer for it represents a certain class of agency (Levy Bros. v Karp, 124 Misc 901). An auctioneer, in making a sale, whether it be of personalty or realty is, by virtue of his employment to make the sale, primarily the agent of the seller (City of New York v Union News Co., 169 App Div 278, affd 222 NY 263). Until the fall of the hammer (Perkins v Applegate, 27 Ky L Rep 522; Tulsa Auto Dealers Auction v North Side State Bank, 431 P2d 408, 412, — [Okla]) he must act in good faith and in the interest of his principal (Becker v Crabb, 223 Ky 549; Faultersack v Clintonville Sales Corp., 253 Wis 432) the sale must be made by the auctioneer in accordance with the instructions of his principal (assignee) (Kelly v Pelt, 220 SW 199 [Tex]). An auctioneer is a special agent, and without further authority from his principal than that which comes from his position of auctioneer, he cannot bind his principal beyond his actually granted authority (Cherry v Stein, 11 Md 1; J. B. & S. Realty Corp. v William Kennelly Inc., 112 NJ Eq 91, affg 109 NJ Eq 337) and an agreement, a contract, which is beyond the auctioneer’s authority is not binding on the principal (J. B. & S. Realty Corp. v Kennelly, supra). An auctioneer’s authority is, without further authorization from his principal, ordinarily at an end when the sale is completed and the purchase price collected; unless specially authorized, he cannot, after sale, vary the contract of sale or the terms on which title is to be given (Muffatt v Gott, 74 Mich 672; Lasker v Patrovsky, 264 Wis 589).
 The owner of property offered for sale at auction has the right to prescribe the manner, conditions and terms of sale, although he may waive compliance by the purchaser with the conditions (United States v Blair, 193 F2d 557; Jones v Tennessee Val. Auth., 334 F Supp 739, 743; Continental Can Co. v Commercial Waterway Dist., 56 Wash 2d 456; Zuhak v Rose, 264 Wis 286). The conditions of a public sale, announced by the auctioneer at the time and place of the sale, are binding on the purchaser, whether or not he knew or heard them (Burling v Brinn, 116 Misc 130; Navarette v TravisQiegler Co., 194 NYS 832).
In the instant matter, Hogue admitted that he knew of the *867 terms of sale and therefore knew of the "14 working day period” allowed for removal by the purchasers from the premises. The assignee permitted the auctioneer to extend the time for removal, and incidentally for payment by Hogue before such removal, until October 6, 1972, but there is no proof that the auctioneer had any authority to extend that time beyond October 6, 1972 and particularly not until November 3, 1972.
There is no question that where an assignee has by mistake paid over moneys, a portion of the assigned estate to a person not entitled thereto, that this court has the power to order and direct the recipient to return the amount mistakenly paid by the assignee to him (Matter of Morgan, 99 NY 145; Matter of Wiltse, 5 Misc 105; Debtor and Creditor Law § 15, subd 1).
Landlord is hereby directed to return to the assignee the sum of $9,333.33 with interest thereon at the rate of 5Va% per annum; and, to that extent the special referee’s report is modified, as it is also modified by this court now that the reasonable value of the "use and occupation” of the premises during the months of August, September, October and November, 1972 has been found to be at the rate of $10,000 per month.
The court further finds that Paul J. Hogue was doing business under the trade name of "Patimco” under which trade name and as a wholly owned subsidiary, Allied Paper and Tin Plate Converting Machinery Company, I. N. C. was doing business (the title of respondent having been duly amended on motion at the hearing) and, to that extent the special referee’s report is also modified.
It therefore appears that after a complete and full hearing no part of the referee’s findings and report may be confirmed; nevertheless the special referee shall receive notice of the settlement of the order hereon so that he may submit an affidavit setting forth his services, the reasonable value thereof, and his disbursements, so that the court can pass upon and evaluate them and insert same, for payment, if any, therein and by whom payment shall be made.
The court makes the following observation: An assignee has a duty, an obligation, to examine all charges submitted to him for payment or approval. In that regard the "Auctioneer’s Report of Sale” dated November 3, 1972, at which time he remitted to the assignee, required careful examination. Had it *868 been thusly examined the assignee could never have paid a full $15,000 for "use and occupation” or even considered payment of "use and occupation” from October 6 to November 3, 1978; nor would it have been allowed by the court. The auctioneer is directed to return to the assignee the amount of $700 for the period from October 6, 1972 to November 3, 1972 for which he was paid as an expense of the estate, which it was not. (Matter of Creveling & Son Corp., 259 App Div 351.)
The court therefore finds that under the circumstances of this case based upon the credible evidence, liability for the use and occupation of the premises to the landlord for the period October 6, 1972 to November 3, 1972 is that of the auctioneer, David Strauss & Co. Inc., Paul J. Hogue and Allied Paper and Tin Plate Converting Machinery Company, I. N. C. doing business as Patimco, a period of 29 days at $333.33 per day for a total of $9,666.57, and that an order may be entered hereon accordingly upon which a judgment may thereafter be entered but without interest, costs or disbursements.
The issue of summarily discharging the assignee and his attorneys as mentioned in this court decision of November 1, 1977 will continue to be held in abeyance subject to compliance with the directions of this court contained in its decision of August 3, 1978 and also the present decision.