**In re SAPOLIN PAINTS, INC., Debtor.**

**In re WOOLSEY MARINE INDUSTRIES, INC., Debtor.**

**UNITED CAPITAL CORP. and Metropolitan Greetings, Inc., Plaintiffs,**

**v.**

**SAPOLIN PAINTS, INC. and Woolsey Marine Industries, Inc., Defendants.**

**Bankruptcy Nos. 180–01691–21, 180–01807–21.**
**Adv. No. 180–0682–21.**

United States Bankruptcy Court, E. D. New York.

June 19, 1981.

Ballon, Stoll & Itzler, New York City, for plaintiffs.

Stroock & Stroock & Lavan, New York City, for defendants.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for intervenor Chemical Bank, N.A.

Davis, Polk & Wardwell, New York City, for Woolsey Creditors Committee.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

In this adversary proceeding brought by United Capital Corporation ("United") and Metropolitan Greetings, Inc. ("Metropolitan"), Chemical Bank, N.A. ("Chemical"), an intervenor herein, has moved for summary judgment dismissing the complaint. The complaint pleads breach of contract and seeks either specific performance or damages. The theory of the complaint is that the defendants are under a contractual obligation to bring suit to void as a preference a security interest held by Chemical in certain assets purchased by the plaintiffs from the defendants.

The defendants, Sapolin Paints, Inc. ("Sapolin") and Woolsey Marine Industries, Inc. ("Woolsey"),[1] are related corporations which are liquidating their assets under Chapter 11 of the United States Bankruptcy Code.[2] The cause of action pleaded in the complaint arises out of such liquidation. Chemical's motion is supported by the debtor-defendants and the Woolsey Creditors Committee.

## THE FACTS

To put the present motion into context, some background may be necessary.

On June 12, 1980, pursuant to a public auction held in the bankruptcy court, and on notice to all creditors and interested parties, United, one of the plaintiffs in this proceeding, purchased substantially all the assets of the two debtor corporations for $2,600,001. Title to these assets was eventually taken in the name of United's designee, Metropolitan, the co-plaintiff. (For convenience, United and Metropolitan are both referred to hereinafter as "United"). Among the assets purchased by United were two notes of Universal Paint Corporation (the "Notes" or "Universal Notes") in the amount of $317,346.07 and $109,250 payable to Sapolin. Chemical holds a security interest in these Notes and it is this interest which is central to this lawsuit.[3]

The terms and conditions under which the assets were sold to United were those set forth in a document denominated the "Asset Purchase Agreement." The terms of this Agreement had been negotiated by the debtor-defendants with the International Fastener Research Corporation ("IFR") in the expectation that IFR would be the purchaser of these assets.

1. Woolsey is a wholly-owned subsidiary of Sapolin. It filed under Chapter 11 one week after Sapolin filed. The Court ordered joint administration of the cases on April 23, 1980.

2. Since these cases were commenced subsequent to October 1, 1979, they are governed by the provisions of the Bankruptcy Reform Act of 1978, Pub.L. 95–598 (Bankruptcy Code).

## A. The Asset Purchase Agreement

Paragraph 1 of the Asset Purchase Agreement, captioned "*Sale and Purchase of Assets*," includes a subparagraph "(b)," which reads, insofar as pertinent, as follows:

"(b) The sale of the Purchased Assets will be made *free and clear of any and all security interests*, liens, claims, charges, mortgages, adverse interests, liabilities and encumbrances of any kind or nature whatsoever (the "Liens"), *except* * * * (ii) that the Purchased Assets will be taken *subject to the Liens* set forth in Schedule A annexed hereto;" (Emphasis in original.)

Schedule A annexed to the "Asset Purchase Agreement," after listing liens on real estate in Brooklyn and New Jersey, continues:

"Other Interest of Chemical Bank in Notes, dated 3/4/80 of Universal Paint Corporation payable to Sapolin in the principal amounts of $317,346.07 and $109,250.00, respectively."

There are other references to the liens set forth in Schedule A in the Asset Purchase Agreement. Subparagraph (a) of Paragraph 7, captioned "Representations and Warranties of Seller," recites, in part:

"(a) Seller has good and marketable title to all of the Purchased Assets and on the Closing Date will have good and marketable title to the Purchased Assets, * * * subject to no Liens, except as set forth in Schedule A * * *."

Subparagraph (b) of the same paragraph reads, in part:

"Buyer will acquire good and marketable title to the Purchased Assets to be sold to Buyer hereunder free and clear of any and all Liens, *except as otherwise set forth in Schedule A * * *.*" (Emphasis supplied.)

3. In its answer to United's complaint, Woolsey asserts as an affirmative defense that it never had any right to or interest in the Universal notes, and has no standing to avoid Chemical's lien.

Near the close of the Asset Purchase Agreement is to be found the paragraph, Paragraph 14, which United contends gives rise to its present action for breach of contract:

"14. *Further Assurance.*.

"If at any time after the Closing Date, Buyer shall consider or be advised that any further assignments, conveyances or assurances in law are necessary or desirable to vest, perfect or confirm of record in Buyer the title to any of the Purchased Assets, or otherwise to carry out the provisions hereof, the proper officers and directors of Seller promptly shall execute and deliver any and all proper deeds, assignments, powers of attorney and assurances in law, and do all things necessary or proper to vest, perfect or confirm title to such property or rights in Buyer and otherwise to carry out the provisions hereof to the extent that funds are available to the Seller therefor."

#### B. *The Sale*

At the hearing on its proposed sale to IFR, United out bid IFR for the debtors' assets. Ronald Itzler, Esq., who represented United at the hearing, stated: "[I]f my client decides to bid, it is prepared to bid on the package as it now stands."

The sale to United or its designee was approved by order of this Court dated June 17, 1980, which order read, in part:

"ORDERED that the aforesaid assets shall be sold, assigned, transferred, conveyed and delivered to Buyer free and clear of all liens, claims and encumbrances of any kind or nature whatsoever other than those which Buyer has agreed pursuant to Section 4 of the Agreement to assume, or subject to which Buyer has agreed to take title pursuant to Section 1(b) of the Agreement; * * * "

Capsulizing these facts, the First Amended Complaint alleges:

"Pursuant to an order of this Court dated June 17, 1980, Sapolin and Woolsey were authorized to sell to Plaintiffs substantially all of their assets pursuant to the terms of a contract between International Fastener Research Corporation and Sapolin and Woolsey dated May 23, 1980, as modified on the record of the hearing held before this Court on June 12, 1980, and approved by this Court by said order (the 'Contract'). The Contract was amended by an asset purchase agreement dated July 7, 1980 by and among Sapolin and Woolsey and Capital [United] to reflect the change in purchase [sic] from International Fastener Research Corporation to Plaintiffs and other modifications concomitant to the change in purchasers. A copy of the Contract is annexed hereto and made a part hereof marked Exhibit 'A.'

\* \* \* \* \* \*

"The Contract specifically provides in Paragraph 1(b)(ii) that the purchased assets, including the Notes were purchased by Plaintiffs subject to liens thereon."

Exhibit "A" to the complaint is the Asset Purchase Agreement entered into with IFR.

#### C. *The Pleadings and the Present Motion*

■ The complaint in this adversary proceeding alleges that the security interest of Chemical in the Universal Notes constitutes a "preference" as defined in § 547 of the Bankruptcy Code because given on March 4, 1980, within ninety days of the filing of Sapolin's petition under Chapter 11. A preference is voidable at the election of a debtor-in-possession.[4] United claims that Paragraph 14 of its contract with the debtors obligating the debtors to convey good

---

**4.** Section 547(b) makes voidable by the trustee "any transfer of property of the debtor—(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made —(A) on or within 90 days before the date of the filing of the petition; * * * and (5) that enabled such creditor to receive more than such creditor would receive if—(A) the case were a case under Chapter 7 of this Title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this Title." A debtor-in-possession enjoys the rights of a trustee. 11 U.S.C. § 1107.

title requires them to take appropriate action to set aside Chemical's lien. The complaint alleges that their failure to do so constitutes a breach of contract. As relief, United demands that Sapolin be directed to commence a proceeding in the bankruptcy court to avoid the lien of Chemical as a preference, or, in the alternative, that United be awarded money damages in an amount equal to the face value of the notes, together with costs and interest.

Chemical, by order of the Court, has been permitted to intervene in this proceeding. *See United Capital Corp. v. Sapolin Paints, Inc.*, 6 B.R. 582 (E.D.N.Y.1980). Summary judgment is requested on the ground that there are no issues of fact to be tried; that the terms on which United bought the assets of the debtors are clear and unambiguous; that they may not be varied by parol evidence; that United acquired the Universal notes subject to Chemical's lien; and that United has no right to, and cannot, compel the debtors to bring an action to set aside that lien.

Plaintiffs oppose summary judgment on the ground that there are triable issues of fact with respect to the meaning of the Asset Purchase Agreement which can be resolved only by trial. They contend that they received verbal assurances from Sapolin's representatives, both before and subsequent to the June 12, 1980 hearing, that an action would be brought to set aside the lien held by Chemical as a preference. Similar conversations, they assert, were held by Sapolin with IFR. They point to Paragraph 14 of the Asset Purchase Agreement as creating an obligation in the debtors to take all appropriate action to give them the best title possible. Sapolin's attorneys concede that subsequent to June 12, 1980, some preliminary steps were taken looking towards setting aside the lien of Chemical, only to be abandoned thereafter.

United acknowledges that the Court was never informed of its negotiations with the debtors to set aside Chemical's lien as a preference. United explains the omission as due to its "understanding that this issue not made clear by the language of the Sales Agreement had been resolved directly between the debtors and the plaintiffs in their respective roles as Buyer and Seller."

### D. *Statement Under Bankruptcy Rule 22(b)*

Pursuant to Local Bankruptcy Rule 22(b), Chemical submitted a statement, which United has not controverted, setting forth the following material facts, *inter alia*, as to which it contends there is no genuine issue to be tried[5]:

"4. Pursuant to Order of this Court, Sapolin and Woolsey sold to MGI as designee for UCC substantially all of their assets pursuant to the terms of a contract between International Fasteners Research Corporation ('IFR') and Sapolin and Woolsey dated May 23, 1980, a true copy of which is attached to the First Amended Complaint herein, as modified by the record of the proceedings before this Court on June 12, 1980 (the "Contract").

"5. Among the assets purchased were certain promissory notes of Universal Paint Corporation (the 'Notes'), payable to Sapolin, which were in the possession of Chemical having theretofore been pledged by Sapolin to Chemical to secure the payment of certain loans from Chemical to Sapolin and Woolsey.

"6. Under the terms of the Contract the Notes were purchased by UCC and MGI subject to the security interest of Chemical therein.

---

5. Local Bankruptcy Rule 22(b) states as follows:

"(b) *Motions for Summary Judgment.* Upon any motion for summary judgment, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judg-ment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

"7. The Contract contains no express agreement by Sapolin to commence any action against Chemical seeking to avoid any security interest of Chemical in the Notes on the grounds that said security interest is allegedly a voidable preference."

Certain other indisputable facts are pertinent. Chemical is the debtor's largest creditor. At the time the petition was filed, Sapolin was indebted to Chemical in the principal sum of approximately $3.2-million. To the extent that Chemical is satisfied from the security it holds, Chemical will not have to press its claims against the general estate and more will be left for the unsecured creditors of the debtor-defendants. Conversely, if Chemical is deprived of its security interest in the Universal Notes, its claim against the general estate will be greater, leaving less for the other creditors of the debtor-defendants.

Sapolin has no equity in the property it sold; its assets fall far short of its liabilities.

### DISCUSSION

#### I.

■ Before considering the precise facts of the present proceeding, some consideration of the statutory framework in which it arises is appropriate. Sapolin and Woolsey filed their Chapter 11 proceeding under the most recent legislative revision of the bankruptcy laws of the United States, the Bankruptcy Code. Although Chapter 11 is captioned "Reorganization," and although the aim of the reorganization provisions of the Code is to facilitate a rehabilitation, the Code contemplates that a debtor corporation "may be liquidated in Chapter 11." 5 *Collier on Bankruptcy*, p. 1123–10 (15th ed. 1980). Section 1123(b)(4) permits the reorganization plan to "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests."

6. Because it was represented to the Court in connection with the sale of the debtors' assets

This represents a change in the law. In *In re Pure Penn Petroleum Co.*, 188 F.2d 851, 855 (2d Cir. 1951), the Court of Appeals for this Circuit held that an arrangement proposed under former Chapter XI of the Bankruptcy Act "must comprehend something more than a mere surrender by the debtor of all his assets for liquidation and distribution to creditors." If a debtor under Chapter XI could sell all his assets, "a Chapter XI plan could bring about the same result as ordinary bankruptcy proceedings but minus the protective provisions which are part of the latter, especially as to a sale of all the assets." *Ibid.*

■ Although Congress now permits what the Second Circuit refused to sanction, creditors are not left entirely without protection in a liquidating reorganization. While the debtor-in-possession may use, sell, or lease property of the estate, other than in the ordinary course of business, it may do so only "after notice and a hearing." The legislative history notes that:

"The trustee must give notice of any use, sale, or lease under this subsection and provide an opportunity for objections and a hearing if there are any objections." H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 345 (1974); S. Rep. No. 95–989, 95th Cong., 2d Sess. 55 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6301.

"Notice and a hearing" is defined in 11 U.S.C. § 102. This phrase means "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances."

Rule 2002 of the Interim Bankruptcy Rules, adopted in the Eastern District of New York, requires that creditors receive at least twenty days' notice by mail of "any proposed sale of property, other than in the ordinary course of business, including the time and place of any public sale, unless the court on cause shown shortens the time or orders a sale without notice." [6]

that time was of the essence, the Court shortened the notice period to ten days.

■ The purpose of these elaborate provisions is self-evident: It is to give the creditors, who have a vital interest in the maximum realization from the assets of the estate, an opportunity to review the terms of any proposed sale, and to object thereto, if they deem the terms and conditions not to be in their best interests. A single creditor, as *In re Pure Penn Petroleum Co.*, *supra*, demonstrates, has sufficient interest to have an order authorizing a sale reviewed, and if appropriate, reversed.

What United is now claiming is that despite the fact that the written terms under which it bought recited that it was buying the Universal notes subject to the lien of Chemical; that the creditors were advised that these were the terms and conditions; that the creditors acquiesced in the sale, and the Court approved it, on those terms, United may, nevertheless, prove that "during [the] negotiations and discussions which preceded the adoption by plaintiff of the sale agreement herein, certain representations with regard to the meaning of paragraph 14 of said agreement were made by representatives of the Debtor and its agents," which representations raise an issue as to the intent of the parties and preclude summary judgment.

■ In the view of this Court, it would be against public policy to permit private negotiations to introduce uncertainty and ambiguity into the clear and explicit terms of a public sale subsequently memorialized by contract. Had United entertained any doubt that it was buying the Universal Notes subject to Chemical's lien, as the Asset Purchase Agreement explicitly provided, it should have clarified the issue before making its bid.[7]

---

7. Indeed, the Court, at the hearing at which United outbid IFR for the debtors' assets, offered United and any other bidders the opportunity to raise any questions and clear up any ambiguities that they might have deemed existed; United raised no questions. "Are there any questions as to the terms on which this property is being offered for sale? From anybody? (No response.)"

■ The conditions of a public sale, announced at the time and place of the sale, are binding on the purchaser. *Burling v. Brinn*, 116 Misc. 130, 132, 189 N.Y.S. 707 (App.T.2d Dep't 1921); *Matter of Container Corp.*, 95 Misc. 859, 866, 408 N.Y.S.2d 725 (Sup.Ct. Queens Co. 1978). *See also Erie Coal & Coke Corp. v. United States*, 266 U.S. 518, 520, 45 S.Ct. 181, 182, 69 L.Ed. 417 (1925).

United, having agreed to buy the Universal Notes subject to Chemical's lien, is bound by the terms of its contract. *John Schapp & Sons Drug Co. v. Rone (In re Morehead)*, 19 F.2d 517 (8th Cir. 1927).

## II.

■ Under general principles of contract law, the extrinsic evidence on which United relies is insufficient to defeat a motion for summary judgment. Where a contract is unambiguous, summary judgment is appropriate. *Tokio Marine & Fire Ins. v. McDonnell Douglas Corp.*, 617 F.2d 936, 940 (2d Cir. 1980); *Security Options Corp. v. Devilliers Nuclear Corp.*, 472 F.2d 844, 846 (2d Cir. 1972); *National Utility Service, Inc. v. Whirlpool Corp.*, 325 F.2d 779, 781 (2d Cir. 1963); 6 *Moore's Federal Practice* ¶ 56.17[43] (2d ed. 1980). That parties dispute the meaning of a contract, or that the Court is called upon to construe its terms, does not render a contract ambiguous. *Dittmore-Freimuth Corp. v. United States*, 390 F.2d 664, 681 (Ct. of Claims, 1968). *Accord: Allegaert v. Chemical Bank*, 6 BCD 1247 (2d Cir. 1980).

The terms of the Asset Purchase Agreement are clear and unambiguous. As United admits, it bought the Universal "Notes * * * subject to the security interest of Chemical therein."[8]

---

8. The difference between bankruptcy sales subject to outstanding liens, and those free and clear of such liens, is basic and well-understood. *Ray v. Norseworthy*, 23 Wall. (90 U.S.) 128, 23 L.Ed. 116 (1874); *Gotkin v. Korn*, 182 F.2d 380 (D.C.Cir.1950). As noted in *Gotkin v. Korn, supra*:

"In the absence of any reference to the contrary in the order of sale, a bankruptcy sale is made subject to valid liens and other

The sellers' boiler-plate commitment in Paragraph 14 of the Asset Purchase Agreement to "do all things necessary or proper to vest, perfect, or confirm title to such property or rights in Buyer and otherwise carry out the provisions hereof * * *," is a commitment to perfect title to what was sold, which were the "Notes * * * subject to the security interest of Chemical therein." It cannot be read as a commitment to remove that security interest for the benefit of United.

### III.

■ Militating against United's claim of a contractual obligation owed it by the debtors to avoid Chemical's lien is the well-settled principle that neither a trustee in bankruptcy, nor a debtor-in-possession, can assign, sell, or otherwise transfer the right to maintain a suit to avoid a preference. *Grass v. Osborn*, 39 F.2d 461 (9th Cir. 1930); *Belding-Hall Mfg. Co. v. Mercer & Ferdon Lumber Co.*, 175 F. 335 (6th Cir. 1909); *Texas Consumer Finance Corp. v. First National City Bank*, 365 F.Supp. 427, 430 (S.D. N.Y.1973); *Parker v. Hand*, 299 Ill. 420, 132 N.E. 467 (1922). *See Webster v. Barnes Banking Co.*, 113 F.2d 1003 (10th Cir. 1940).

*Collier on Bankruptcy*, the authoritative text in this area, states flatly:

> "[T]he right of recovery vested by the Act in the trustee is not assignable. Nor can a purchaser of the bankrupt's assets require the trustee to proceed with a suit to recover a preference for the purchaser's benefit." (Footnotes omitted.) 3 *Collier on Bankruptcy* ¶ 60.57 at p. 1095 (14th ed. 1979).

■ The reasons are self-evident: The power to avoid a preference is one which is to be exercised in the interests of securing equality of distribution among creditors. *Canright v. General Finance Corp.*, 35 F.Supp. 841, 844 (E.D.Ill.1940), *aff'd*, 123

F.2d 98 (7th Cir. 1941); 4 *Collier on Bankruptcy* ¶ 547.01 (15th ed. 1980).

In an analogous situation, the Second Circuit has held that where no benefit to the estate will result, a debtor-in-possession may not exercise the avoidance powers of a trustee. *Whiteford Plastics Co., Inc. v. Chase National Bank of New York City*, 179 F.2d 582 (2d Cir. 1950) (improperly-filed conditional sales contract).

■ Even where a contract explicitly purports to assign the right to set aside a preference, the court will give it no effect. *Grass v. Osborne, supra; Texas Consumer Finance Corp. v. First National City Bank, supra*, at 429–30.

Directly in point is *Grass v. Osborn*. There, too, a sale of assets by a debtor was involved. The buyer there sought to compel the trustee to proceed with a' preference action, of which he would have enjoyed the fruits. The Ninth Circuit rejected this argument:

> "[t]he trustee in bankruptcy could not sell his right to set aside a preferential transfer, and it is therefore immaterial to examine the terms of the assignment made by the trustee at the time of the sale to the appellant, because even if the assignments purported to specifically transfer the right to set aside the transaction with the Atiyeh Bros., on the ground that such transfer created a preference, the assignment would be ineffective." *Id.* at 461–62.

■ To the extent that United is seeking relief in the nature of specific performance to compel the debtors to bring an action to set aside Chemical's lien as a preference, its action will not lie, under any circumstances.

### IV.

■ Extrinsic evidence cannot be invoked to create ambiguity where none ex-

---

encumbrances, in which case the interests of the lien holders are in no way affected by the sale. * * *

\* \* \* \* \* \*

"But when a sale free of liens is ordered, invariably the order provides for a transfer of

all valid encumbrances from the *res* to its proceeds. The bankruptcy court has power to displace existing liens only to the extent to which it imposes them upon the proceeds * * *." (Footnote omitted.) 182 F.2d at 382.

ists. *Tramco Indus., Inc. v. Broadhollow Associates*, 30 A.D.2d 522, 290 N.Y.S.2d 260 (1st Dep't 1968), *aff'd*, 23 N.Y.2d 841, 297 N.Y.S.2d 739, 245 N.E.2d 408 (1969); *Spector v. Sovereign Const. Co.*, 45 A.D.2d 673, 356 N.Y.S.2d 79 (1st Dep't 1974).

▆ Whatever negotiations were had between IFR and United, on the one hand, and Sapolin, on the other, prior to sale, are inadmissible under the parol evidence rule. *Diesel Const. Co. v. Chase Manhattan & Realty Trust*, 58 A.D.2d 760, 396 N.Y.S.2d 239 (1st Dep't 1977), *aff'd*, 44 N.Y.2d 871, 407 N.Y.S.2d 694, 379 N.E.2d 220 (1978); *Leitman v. Baldwin*, 57 A.D.2d 944, 395 N.Y.S.2d 87 (2d Dep't 1977); *Orth-O-Vision, Inc. v. Home Box Office*, 474 F.Supp. 672, 679 (S.D.N.Y.1979); Restatement, Contracts 2d, Tentative Drafts 1–7, § 241 (1973).

Any such negotiations subsequent to sale cannot change the terms and conditions from those announced to the creditors and approved by the Court. Although the assets sold belong to the debtors, their authority to sell them was derived solely from the position as trustee for their creditors. They were acting as their creditors' agent. The position of the debtors is similar to that of an auctioneer who "cannot, after sale, vary the contract of sale or the terms on which title is taken." *Matter of Container Corp., supra*, 95 Misc.2d at 566, 408 N.Y.S.2d 725 (and cases there cited). Any unauthorized change in the terms on which title was transferred would be a breach of trust.

### V.

The liquidation of an insolvent's assets in the daily business of the bankruptcy courts. In some instances, it is to the advantage of the estate to sell such assets subject to existing liens; in other cases, it is to the advantage of the estate to sell free and clear of liens. The decision to sell subject to liens, voidable as preferences, may well

be made to avoid the expense of litigation, or the delay in winding up an estate that such litigation might entail, or, as in this case, to reduce the claims of a partially secured creditor against the general estate. Such sales, like ordinary sales, carry with them the implicit, or explicit, obligation on the part of the seller to take whatever action is appropriate to convey to the purchaser the best title possible under the circumstances. If this obligation, where made explicit, could be interpreted as compelling, whatever the interest of the creditors might be, the initiation of litigation to remove for the benefit of the purchaser the encumbrances subject to which the property had been sold, sales in bankruptcy courts would never have any finality and creditors could never be certain of the net realization.

As previously noted, the power given a trustee in bankruptcy, or a debtor-in-possession, to set aside a preferential transfer is for the purpose of ensuring equitable distribution of the assets of an insolvent corporation among its creditors. United wants the power to void a preference utilized not to increase the return to creditors or augment the distribution to them, but to increase the value of the assets which it, a stranger to the bankruptcy, has purchased from the trustee of the creditors. The power to void a preference is to be used to reduce the assets available for distribution to the general creditors and to enrich a stranger. United is attempting to stand the law of preferences on its head.[9]

On facts strikingly similar to those present here, the highest court of New Jersey refused to allow on equitable grounds a challenge to the validity of a mortgage raised by one who had purchased the property subject to that mortgage from the receiver of an insolvent corporation, saying:

> "It is apparent from the facts recited that the parties interested in the insolvency proceeding, including those credi-

---

9. United's contention that the preference action it is seeking to compel the debtors to bring is to the benefit of the debtors' creditors because, otherwise, the debtors will be answerable for damages to United, begs the question. The argument assumes that the debtors obligated themselves to take action to the detriment of the creditor body, *i. e.*, to bring an action to void a preference which, if successful, would reduce the general estate available for distribution.

tors who held liens subsequent in date to the complainant's mortgage, united in conceding the validity of that instrument, and the right of the complainant to enforce it for its full amount, less such sums as had been paid upon the principal. It is equally apparent that the Pennsylvania Iron Works Company by purchasing the premises subject to the complainant's mortgage got them for a sum less, by just the amount of the mortgage, than if it would have done if the sale had been made free from its lien, and reduced by this amount the sum which would otherwise have been raised to satisfy the debts due to the creditors of the insolvent corporation. The injustice of such a claim as it now sets up must condemn it. To repeat, in substance, what was said by Beasley, C. J., speaking for this court in *Warwick v. Dawes*, 26 N.J.Eq. 548, 556, a case almost identical in its legal aspect with that now before us: If the purchaser can succeed in its defenses against this mortgage, it is painfully obvious that it is allowed to violate the condition upon which it acquired the property, as such condition was understood and consented to by it, and by all the other parties interested. By the repudiation of this security it is not the mortgagor, nor its creditors for whose account the sale was directed to be made, who are benefited, but the purchaser, and this to the loss of those creditors whose claims remain partly unsatisfied by reason of the fact that the sum produced by the sale under the condition stated was insufficient to pay them in full. Nothing can be more inequitable than the claim of this purchaser. It asks the court to help it violate the fair understanding on which the sale was made and its own express promise in order that it may retain money which does not of right belong to it, and for which it has given absolutely nothing in the way of consideration. In our opinion the circumstances under which the sale was made preclude the appellant from maintaining successfully so unfair a position." *Camden Safe Deposit & Trust Co. v. Citizens' Ice & Cold Storage Co.*, 71 N.J.E. 221, 65 A. 980 (Ct. of Errors & Appeals of N.J., 1907).

The decision as to whether to void a preference, or not, is one for the trustee, or, here, the debtor-in-possession, to make. It is a decision that is to be made for the benefit of the creditors. Here, the decision was made and acquiesced in by the creditors that Chemical's lien be left in place, and that the Universal notes be subject to that lien. United brought the Universal notes subject to that lien; the contract of sale clearly so provided. There was no ambiguity in the terms and conditions of sale which received the approval of the Court. Despite any conversations between United and Sapolin, those terms and conditions are controlling. Summary judgment is, therefore, appropriate.

Submit judgment accordingly.